**NONCONFIDENTIAL**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE LEO M. GORDON, JUDGE**

**Consol. Court No. 15-00004**

**MEXICHEM FLUOR, INC. AND**
**E.I. DU PONT DE NEMOURS AND COMPANY,**

**Consol. Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**SINOCHEM ENVIRONMENTAL PROTECTION CHEMICALS (TAICANG) CO., LTD., ZHEJIANG QUHUA FLOUR-CHEMISTRY CO., LTD. AND ZHEJIANG SANMEI CHEMICAL INDUSTRY CO.,**

**Defendant-Intervenors.**

---

# APPENDIX TO DEFENDANT INTERNATIONAL TRADE COMMISSION'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR JUDGMENT ON THE AGENCY RECORD

---

**KARL S. VON SCHRILTZ**
**Attorney-Advisor**
**Telephone (202) 205-3096**

**NATALINE VIRAY-FUNG**
**Attorney for Defendant**
**Office of the General Counsel**
**U.S. International Trade Commission**
**500 E Street, SW, Suite 707**
**Washington, DC 20436**
**Telephone (202) 205-2657**

**DOMINIC L. BIANCHI**
**General Counsel**
**Telephone (202) 205-3061**

**ANDREA C. CASSON**
**Assistant General Counsel**
**for Litigation**
**Telephone (202) 205-3105**

# NONCONFIDENTIAL APPENDIX FROM THE ADMINISTRATIVE RECORD

***1, 1, 1, 2-Tetrafluoroethane from China***
**Inv. Nos. 701-TA-509 and 731-TA-1244 (Final)**

**VOLUME I**

| | |
|---|---|
| 1-69 | Mexichem's Comments |
| 1-73 | Questionnaire Instructions |
| | Domestic Producers' Questionnaires (selected pages) |
| | Importers' Questionnaires (selected pages) |
| 1-150 | Dougan Hearing Exhibits (selected pages) |
| 1-191 | 79 Fed. Reg. 73102 (Dec. 9, 2014) |
| 1-198 | Views of the Commission, USITC Pub. 4503 |

# 1-69

# Mexichem's Comments

**SCHAGRIN ASSOCIATES**
900 SEVENTH STREET, N.W.
SUITE 500
WASHINGTON, D.C. 20001
(202) 223-1700

FAX (202) 429-2522

EMAIL: schagrin@erols.com

July 1, 2014

**Inv. Nos. 701-TA-509 and 731-TA-1244**
**Investigation (Final)**
Total Pages: 48

**PUBLIC DOCUMENT**

**FILED VIA EDIS AND BY HAND**

The Honorable Lisa R. Barton
Acting Secretary
U.S. International Trade Commission
500 E St. SW, Room 112
Washington, DC 20436

**Re: 1,1,1,2-Tetrafluoroethane from China: Petitioner's Comments on Draft Questionnaires**

Dear Secretary Barton,

On behalf of petitioner and domestic producer Mexichem Fluor Inc., we hereby address the requests of the Commission for comments on the draft questionnaires in the above-referenced investigation and respond to items requested by the Commission investigator to address certain issues raised in the preliminary determination.

First, in reference to item one raised in the Commission's June 18 email to parties regarding packaging sizes, petitioner Mexichem Fluor suggests that a new question be added to the producer's questionnaire as IV-3, as follows:

> "If during the POI or prior to the POI your firm did not produce product 2 (12-ounce cans), was your firm capable of arranging for the supply of product 2 through distributors by having them package bulk R-134a into 12-ounce cans for retail customers?
>
> ☐ Yes- If yes please explain
>
> ☐ No"

We would also suggest a parallel question in the purchasers' questionnaire, adding a new question IV-8 after the current question IV-7 on packaging, as follows:

"If you were not able to purchase R-134a in 12-ounce cans directly from a U.S. producer during the POI were you able to purchase domestically produced R-134a in 12-ounce cans from distributors?

- ☐ Yes
- ☐ No- Please explain"

As to the second issue raised by the email from Mr. Enck regarding pricing products and levels of trade, the petitioner agrees with the three pricing products described in IV-2. However, similar to some past Commission questionnaires that ask for separate pricing product data by channel of distribution, the petitioner suggests that the Commission create two tables for pricing data information, IV-2a and IV-2b (an example is provided in Exhibit 1). The first table would specify that the pricing information is for sales to distributors and the second table would specify that the pricing information is for sales to retailers. The same types of changes would be made to the importers' questionnaire with the creation of two different pricing pages III-2a and III-2b. These are also included in Exhibit 1. The proposed changes still incorporate the minor wording change that the request to any big box retailer that is also an importer asks that they not report sales from their stores directly to consumers.

The channel of distribution issue also raises another issue in this investigation. As petitioner raised at the hearing and in its post-conference brief (at 2), it appears that significant volumes of imports of 1,1,1,2 Tetrafluoroethane from China are being misclassified. This is occurring despite the fact a new HTS specifically was broken out for this product and the HTS number is contiguous with the product covered by the scope of the investigation. Even respondents' counsel admitted at the conference that there was misclassification and stated that this massive misclassification probably occurred because the new HTS for 1,1,1,2, Tetrafluoroethane was only created on January 1, 2009 (*see* conference transcript at 132-33).

Therefore, it is possible that significant U.S. importers of the subject merchandise would not receive questionnaires, because if they were misclassifying their imports they would not show up in the CBP data given by Customs to the Commission for the appropriate HTS item.

In addition, if importers who were much more likely to have direct sales, rather than U.S. producers, then big box retailers would certainly be among the major purchasers of 1,1,1,2, Tetrafluoroethane yet would not receive purchaser questionnaires. Therefore, the petitioner suggests that in addition to AutoZone, Commission staff send importer and purchaser questionnaires to the following big box retailers:

- Advance Auto Parts
- Walmart
- Sam's Club
- Target
- Home Depot
- Sears
- O'Reilly Auto parts

Copies of website pages from these retailers' websites are provided in Exhibit 2. If the Commission staff requests, petitioner will endeavor to provide contact information, addresses, and email addresses for these big box retailer purchasing departments.

This issue also relates to the issue of the appropriate data base to use for the volume and the value of subject imports. As has occurred in previous Commission investigations in which the appropriate quantity and value of imports has been clouded by misclassification issues (e.g., see Drill Pipe and Drill Collars from China 701-TA-474 and 731-TA-1176), the Commission has asked importers to provide information on the HTS classification of their imports. The petitioner has attached a proposed new chart for the importers questionnaire as question II-7 (*see* Exhibit 3).

As to the third item in Mr. Enck's email to the parties, petitioner is reviewing the lost sales and lost revenue allegations contained in the petition and will clarify any contact information including emails, phone numbers and fax numbers. These will be sent to the economist as soon as possible and will be served on the other parties. Similarly, in the interest of giving Commission staff as much time as possible for lost sales and lost revenue allegations, petitioner will endeavor to proffer any new lost sales and lost revenue allegations to the Commission economist prior to filing its questionnaire response on August 15, 2014. Of course,

these will be served at the time they are transmitted to the Commission on the parties to the investigations that have administrative protective orders.

In response to question four in Mr. Enck's email to the parties, to further explore the issue of transfer pricing for the Commission's final investigation the petitioner suggests an additional question in the U.S. producer questionnaire as follows:

"III-2 accounting system…briefly describe your firms accounting system: add a new question 5. If your firm has purchases or sales of products to/from related firms in foreign countries, does your firm comply with IRS transfer pricing rules?

- ☐ Yes
- ☐ No- Please explain"

Finally, the petitioner has three additional suggested changes to the purchasers' questionnaires. First, in order to differentiate between the behavior of U.S. manufacturers and importers of Chinese R-134a, the petitioner suggests breaking question III-2 into two subparts. Question III-2a would read, "Competition for sales—do you compete for sales to your customers with domestic manufacturers from which you purchase R-134a?" and question III-2b would ask "Competition for sales—do you compete for sales to your customers with importers from which you purchase R-134a?

- ☐ Yes
- ☐ No"

For question III-11 (supply constraints) petitioner would recommend adding to the description box the following:

"If yes, please describe, including month and year."

A new question in the packaging section as question IV-9; "If your firm is a distributor of R-134a, does your firm possess the capability of repackaging bulk R-134a into smaller sizes?

- ☐ Yes
- ☐ No"

Respectfully Submitted,

Roger B. Schagrin
Paul W. Jameson
John W. Bohn
**Schagrin Associates**
*Counsel to Mexichem Fluor Inc.*

# CERTIFICATE OF SERVICE

**1,1,1,2-Tetrafluoroethane from the People's Republic of China**
**701-TA-509 and 731-TA-1244**
**Investigation (Prelim)**

I, Roger B. Schagrin, hereby certify that copies of the attached public document were served today, July 1, 2014, by hand delivery upon the following parties.

Elizabeth M. Hein, Esq.
**Alston & Bird LLP**
950 F Street, N.W.
Washington, D.C. 20004-1404

John D. Greenwald, Esq.
**Cassidy Levy Kent (USA) LLP**
2000 Pennsylvania Avenue, N.W.
Suite 3000
Washington, D.C. 20006

Matthew J. McConkey, Esq.
**Mayer Brown LLP**
1999 K Street, NW
Washington, DC 20006

Roger B. Schagrin

# EXHIBIT 1

**PART III. – PRICING AND RELATED INFORMATION--*Continued***

III-2a. **Price Data** – Report below the quarterly price data[1] for pricing products[2] imported from China and sold by your firm to distributors.

# China

**Report data in actual POUNDS and actual dollars (not 1,000s).**

| Period of Shipment | Product 1 | | Product 2 | | Product 3 | |
|---|---|---|---|---|---|---|
| | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) |
| **2011**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2012**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2013**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2014**: January-March | | | | | | |
| April-June | | | | | | |

[1]Net values (*i.e.*, gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods), f.o.b. your firm's U.S. point of shipment.

[2]Pricing product definitions are provided on the first page of Part III.

**Note.--**If your firm's product does not exactly meet the product specifications but is competitive with the specified product, provide a description of your firm's product. Also, please explain any anomalies in your firm's reported pricing data.

Product 1:
Product 2:
Product 3:

**Please note that values should be f.o.b., U.S. point of shipment and should not include U.S.-inland transportation costs. Values should reflect the *final net* amount paid to your firm (i.e., should be net of all deductions for discounts or rebates).**

**PART III. – PRICING AND RELATED INFORMATION**--*Continued*

III-2b. **Price Data** – Report below the quarterly price data[1] for pricing products[2] imported from China and sold by your firm to retailers. If you are a retailer, do not include any direct retail sales to consumers.

## China

**Report data in actual POUNDS and actual dollars (not 1,000s).**

| Period of Shipment | Product 1 | | Product 2 | | Product 3 | |
|---|---|---|---|---|---|---|
| | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) |
| **2011**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2012**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2013**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2014**: January-March | | | | | | |
| April-June | | | | | | |

[1]Net values (*i.e.*, gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods), f.o.b. your firm's U.S. point of shipment.

[2]Pricing product definitions are provided on the first page of Part III.

**Note.**--If your firm's product does not exactly meet the product specifications but is competitive with the specified product, provide a description of your firm's product. Also, please explain any anomalies in your firm's reported pricing data.

Product 1:
Product 2:
Product 3:

**Please note that values should be f.o.b., U.S. point of shipment and should not include U.S.-inland transportation costs. Values should reflect the *final net* amount paid to your firm (i.e., should be net of all deductions for discounts or rebates).**

**PART IV. – PRICING AND RELATED INFORMATION**--*Continued*

IV-2a. **Price Data** – Report below the quarterly price data[1] for pricing products[2] produced and sold by your firm to distributors.

**Report data in actual POUNDS and actual dollars (not 1,000s).**

| Period of Shipment | Product 1 | | Product 2 | | Product 3 | |
|---|---|---|---|---|---|---|
| | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) |
| **2011**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2012**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2013**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2014**: January-March | | | | | | |
| April-June | | | | | | |

[1]Net values (*i.e.*, gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods), f.o.b. your firm's U.S. point of shipment.

[2]Pricing product definitions are provided on the first page of Part IV.

**Note.**--If your firm's product does not exactly meet the product specifications but is competitive with the specified product, provide a description of your firm's product. Also, please explain any anomalies in your firm's reported pricing data.

Product 1:
Product 2:
Product 3:

U.S. Producers' Questionnaire – R-134a from China (Final)

**PART IV. – PRICING AND RELATED INFORMATION**--*Continued*

IV-2b. **Price Data** – Report below the quarterly price data[1] for pricing products[2] produced and sold by your firm to retailers.

**Report data in actual POUNDS and actual dollars (not 1,000s).**

| Period of Shipment | Product 1 | | Product 2 | | Product 3 | |
|---|---|---|---|---|---|---|
| | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) |
| **2011**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2012**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2013**: January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2014**: January-March | | | | | | |
| April-June | | | | | | |

[1]Net values (*i.e.*, gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods), f.o.b. your firm's U.S. point of shipment.

[2]Pricing product definitions are provided on the first page of Part IV.

**Note.**--If your firm's product does not exactly meet the product specifications but is competitive with the specified product, provide a description of your firm's product. Also, please explain any anomalies in your firm's reported pricing data.

Product 1:
Product 2:
Product 3:

# EXHIBIT 2



Get even lower prices on hot items Shop Now

# A/C Pro R-134A Recharge Hose and Gauge

★ (1 Customer Review) Write a review

**Buy from Walmart** Shipping & Pickup

Online
$22.88

Out of stock online

**Free store pickup** with **site** to store

– not available in Washington Check More Stores

**Also in stores** Not carried in your local Washington store.

Product availability, styles, promotions and prices may vary between stores and online.

**Sponsored Products**

Robinair 34288 R134a A/C Reco...
$2,495.00
Equiptool

FJC (9150) Extreme Cold Ad...
$6.38
ToolTopia.com

Uniweld 49016 R134a AUTO RE...
$21.00
hvacpw.com

Interdynamics EZ Chill R-134a Refr...
$32.99
Advance Auto Parts

Robinair 2-Way Brass Charging ...
$73.51
Auto Body Toolmart

## Item Description

This is a reusable, extra-long, extra-sturdy braided R134A recharge hose with an easy-to-read gauge and temperature rotating dial.

**A/C Pro R-134A Recharge Hose and Gauge:**

- Reusable
- Extra-long, extra-sturdy braided R134A recharge hose
- Easy-to-read gauge with temperature rotating dial

## Specifications

Top of Page

| | |
|---|---|
| Battery Type: | Does Not Contain a Battery |
| Model No.: | ACP-400 |
| Shipping Weight (in pounds): | 0.7 |
| Product in Inches (L x W x H): | 7.88 x 3.0 x 11.25 |
| Walmart No.: | 551679149 |

## Pricing Policy

**About Our Prices**

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.





6/20/2014 Amazon.com: DuPont Suva R134a Refrigerant 12oz (Pack Of 12): Automotive

amazon
Try Prime
Your Amazon.com
Today's Deals
Gift Cards
Sell
Help
fire PHONE
JUST ANNOUNCED
Learn more
Shop by Department
Search
All
r-134a
Go
Hello. Sign in Your Account
Try Prime
Cart
Wish List
Automotive
Part Finder
Deals & Rebates
Best Sellers
Tools & Equipment
Interior Accessories
Truck
Jeep
RV
Motorcycle & Powersports
Shop by vehicle:
Year
Make
Model
Go
Your Garage (0)
134a
CASE of 12 Cans
Click to open expanded view
Share
Qty: 1
$57.95
In Stock. Sold by Alliance Automotive
Add to Cart
or
Sign in to turn on 1-Click ordering.
Add to Wish List
Other Sellers on Amazon
$69.95
Add to Cart
Free Shipping
Sold by: Xpress Auto Parts
2 new from $57.95
Have one to sell?
Sell on Amazon

# DuPont Suva R134a Refrigerant 12oz (Pack Of 12)

by DuPont

1 customer review

Price: $57.95 & **FREE Shipping**

In Stock.

Ships from and sold by Alliance Automotive.

- Product of the USA
- "Pure" R134, no oil or dye added
- Fits all vehicles from 1994 - 2010, and most vehicles after 2010
- Can be used to retrofit R12 systems & recharge R134 systems
- Meets AHRI-700 and SAE J2776 Purity Standards

› See more product details

2 new from $57.95

## Frequently Bought Together

**Price for all three: $85.63**

Add all three to Cart | Add all three to Wish List

These items are shipped from and sold by different sellers. Show details

- ✔ **This item:** DuPont Suva R134a Refrigerant 12oz (Pack Of 12) $57.95
- ✔ Mastercool 85510 R134a Can Tap Valve-Screw-On Model $11.96
- ✔ Mountain 8201 R-12 to R-134a Conversion Quick Connect Coupler Set $15.72

## Customers Who Bought This Item Also Bought

134a

Johnsen's (6312-12PK) R-134a A/C Refrigerant - 12 oz., (Pack of 12)
47
$60.76 Prime

One Case - 12 Cans of R134A Refrigerant for Automotive Systems
16

Mountain 8201 R-12 to R-134a Conversion Quick Connect Coupler Set
120
$15.72 Prime

Performance Tool W5201 Wilmar HNBR O-Ring Assortment, 270-Piece
31
$9.40 Prime

## Special Offers and Product Promotions

- **Get a $75 Amazon.com Gift Card:** Get the Discover it Card and get a **$75.00** Amazon.com Gift Card after your first purchase. Learn more.

## Product Information

Technical Details

Additional Information

http://www.amazon.com/DuPont-Suva-R134a-Refrigerant-12oz/dp/B00IO4EYMY/ref=sr_1_9?ie=UTF8&qid=1403282611&sr=8-9&keywords=r-134a#productDet... 1/4

| | |
|---|---|
| Brand | DuPont |
| Item Weight | 12 pounds |
| Manufacturer Part Number | 12D11125612 |

| | |
|---|---|
| ASIN | B00IO4EYMY |
| Customer Reviews | 1 review<br>5.0 out of 5 stars |
| Best Sellers Rank | #2,041 in Automotive (See top 100)<br>#11 in Automotive > Oils & Fluids > Refrigerants |
| Shipping Weight | 12 pounds (View shipping rates and policies) |
| Date First Available | February 26, 2014 |

Feedback

Would you like to give feedback on images or tell us about a lower price?

## Product Description

DuPontTM Suva® 134a is a non-ozone depleting HFC refrigerant and is used in automobiles and some commercial refrigeration, as well as chiller systems and home appliances. It is the standard for mobile air conditioning and can also be used to retrofit existing R-12 mobile air conditioning systems. This is a product of the USA and is designed to safely mix with any R134 in your system.

## Customers Who Viewed This Item Also Viewed

Page 1 of 12

Johnsen's (6312-12PK) R-134a A/C Refrigerant - 12 oz., (Pack of 12)
47
$60.76 Prime

One Case - 12 Cans of R134A Refrigerant for Automotive Systems
16

Johnsen's (6312) R-134a A/C Refrigerant - 12 oz.
30
$10.48 Prime

Interdynamics (AF-3) Arctic R-134a Ultra Synthetic Freeze Refrigerant - 12 oz.
33
$12.50 Prime

## Customers viewing this page may be interested in these sponsored links (What's this?)

- **134a** - supply **134a** produce high quality products www.bluestargtc.com/
- **R-22 Available Now** - Immediate delivery, various sizes Return used gas for cash, get quote www.airgasrefrigerants.com/
- **R134a** - Search Thousands of Catalogs for **R134a** www.globalspec.com/

See a problem with these advertisements? Let us know

## Customer Questions & Answers

Have a question? Ask the owners here.

Ask owners

Typical questions asked about products:

- Is the item durable?
- Is this item easy to use?
- What are the dimensions of this item?

## Customer Reviews

(1)
5.0 out of 5 stars

5 star

Share your thoughts with other customers

Write a customer review

Advance Auto Parts
134a REFRIGERANT

Hover over the image to zoom in

*Hot Item! Please note, this item is not eligible for further promotional discounts, coupons or special offers.*

# Advance Auto Parts 12 oz. Can R-134a Refrigerant

Part No. A1300 Warranty

 4.7 (21 reviews) | View Customer Q&A

Read 21 Reviews

$14.99 Check Store availability

Quantity 1 20001 Go

Shipping: Item not available for delivery

 Sign Up to see what your friends like.

+1 Recommend this on Google

Share this:

2

**See if this part fits a specific vehicle.**

Check Vehicle Fit

Automotive refrigerant R-134a for use in automobiles and light trucks.

Back To Top

| | |
|---|---|
| Charging Hose Included: | No |
| Container Material: | Metal |
| Container Size: | 12 oz |
| Container Type: | Can |

**+100** Earn points simply by sharing with your friends!

**Need more help?**
**Get advice from friends ›** 

**Like this category?**
**Follow trending products** 

**REVIEW SNAPSHOT®** by PowerReviews

4.7 (based on 21 reviews)

100% of respondents would recommend this to a friend.

| PROS | CONS | BEST USES |
|---|---|---|
| Easy to use (17) | | Large cars (15)<br>Small cars (15)<br>Trucks (15) |

| | |
|---|---|
| CAR & TRUCK: | Auto enthusiast (6), Casual driver (6), Competitive driver (3), Mechanic (3), Truck enthusiast (3) |
| REVIEWER PROFILE: | Casual driver (4), Auto enthusiast (3), Mechanic (3) |
| WAS THIS A GIFT?: | No (13) |

Write a Review  Share and Earn points

**Most Liked Positive Review**

**Works just fine!**

Just an ordinary can of R134a refrigerant. Use this if you're not sure what the blend is for your R134a labeled A/C system. I don't think it contains sealants or oil based on...

Read complete review

VS

**Most Liked Negative Review**

**Air Cold**

It has my air blowing cold.

 CLEARANCE
Get even lower prices on hot items

Shop Now

Walmart
Save money. Live better.

Arctic Freeze
Ultra
Synthetic
134a+

# Arctic Freeze Refrigerant, 12 oz

Be the first to write a review

**Buy from Walmart** | Shipping & Pickup

**$14.47**

Quantity 1 Add to Cart

Add to my: **Wish List** | **Registry**

**In stock for:**

- Ship to home is not available for this product.
- **Free store pickup** in Washington
  - as soon as today with site to store  Check More Stores

Out of stock for shipping to home.

Product availability, styles, promotions and prices may vary between stores and online.

## Item Description

Arctic Freeze Refrigerant replaces lost refrigerant and oil to the A/C system. It's formulated with advanced QwikBoost chemistry that was developed by NASA.

**Arctic Freeze Refrigerant, 12 oz:**

- Replace lost refrigerant and oil to the A/C system
- Formulated with advanced QwikBoost chemistry that was developed for NASA
- Colder air 50-percent faster
- Eliminates moisture and acid from A/C system

*Note that this item cannot be shipped to California. Please refer to California version of the product*

> ***Safety Alert:*** *Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our* ***returns policy*** *for more information.*

**Sponsored Products**

Robinair 34288 R134a A/C Reco...
$2,495.00
Equiptool

Uniweld 49016 R134a AUTO RE...
$21.00
hvacpw.com

Interdynamics EZ Chill R-134a Refr...
$32.99
Advance Auto Parts

FJC (6035) R-134a Charge Kit # 60...
$5.08
ToolTopia.com

Interdynamics GBM-2CS Delux...
$15.87
JB Tool Sales

## *Specifications*

*Top of Page*

| | |
|---|---|
| *Model No.:* | *AF-3PDQ12PK* |
| *Shipping Weight (in pounds):* | *0.94* |
| *Product in Inches (L x W x H):* | *3.0 x 3.0 x 5.0* |
| *Walmart No.:* | *001051947* |

## *Pricing Policy*

***About Our Prices***

*We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.*



amazon
Try Prime
Your Amazon.com
Today's Deals
Gift Cards
Sell
Help
fire PHONE
JUST ANNOUNCED
Learn more
Shop by Department
Search
All
r-134a
Go
Hello. Sign in Your Account
Try Prime
0 Cart
Wish List
Automotive
Part Finder
Deals & Rebates
Best Sellers
Tools & Equipment
Interior Accessories
Truck
Jeep
RV
Motorcycle & Powersports
Shop by vehicle:
Year
Make
Model
Go
Your Garage (0)

MOBILE A/C REFRIGERANT
134a
NET WT. 12 OZ.

Roll over image to zoom in

# Johnsen's (6312) R-134a A/C Refrigerant - 12 oz.

by Johnsen's

30 customer reviews

List Price: $14.99

Price: $10.48 & **FREE Shipping** on orders over $35. Details

You Save: $4.51 (30%)

In Stock.

Ships from and sold by Amazon.com. Gift-wrap available.

- 100% Pure National Refrigerants R134a
- No Gimmicks or Additives
- Refrigerant Products Proudly Filled in the USA
- Ships via UPS Ground (ORM-D)
- This Item Can Not Be Shipped to California, PO Boxes or Outside the Continental USA

› See more product details

8 new from $7.50

**Special Shipping Information**: This product may not be available for 1 or 2 day shipping due to federal regulations that require it to ship via ground ship methods only. This product can only be shipped within the 48 contiguous states.

Share

Qty: 1

Add to Cart

or

Sign in to turn on 1-Click ordering.

Add to Wish List

**Other Sellers on Amazon**

$7.50 Add to Cart
+ $4.74 shipping
Sold by atozwarehouse

$12.99 Add to Cart
+ Free Shipping
Sold by Baxter Auto Parts

$8.95 Add to Cart
+ $7.00 shipping
Sold by Sherco Auto Supply

8 new from $7.50

Have one to sell? Sell on Amazon

## Frequently Bought Together

**Price for both: $29.91**

Add both to Cart | Add both to Wish List

Show availability and shipping details

- ✔ **This item:** Johnsen's (6312) R-134a A/C Refrigerant - 12 oz. $10.48
- ✔ Interdynamics GBM-4 R-134a Air Conditioning Pro Heavy Duty Charging Hose and Gauge $19.43

## Customers Who Bought This Item Also Bought

Page 1 of 20

Interdynamics (AF-3) Arctic R-134a Ultra Synthetic Freeze Refrigerant - 12 oz.
33
$12.50 Prime

Johnsen's (6312-12PK) R-134a A/C Refrigerant - 12 oz., (Pack of 12)
47
$60.76 Prime

Interdynamics GBM-4 R-134a Air Conditioning Pro Heavy Duty Charging Hose and Gauge
16

R-134a

Interdynamics (347) R-134a Refrigerant with Sub-Zero Synthetic Air Conditioning Booster ...
9

## Special Offers and Product Promotions

- **Get a $75 Amazon.com Gift Card:** Get the Discover it Card and get a **$75.00** Amazon.com Gift Card after your first purchase. Learn more.

## Product Information

### Technical Details

| | |
|---|---|
| Brand | Johnsen's |
| Item Weight | 12 ounces |
| Product Dimensions | 5.5 x 3 x 3 inches |
| Item model number | 6312 |
| Manufacturer Part Number | 6312 |

### Additional Information

| | |
|---|---|
| ASIN | B00C4XFMO0 |
| Customer Reviews | 30 reviews<br>4.4 out of 5 stars |
| Best Sellers Rank | #306 in Automotive (See top 100)<br>#3 in Automotive > Oils & Fluids > Refrigerants |
| Shipping Weight | 1 pounds (View shipping rates and policies) |
| Shipping | Currently, item can be shipped only within the U.S. and to APO/FPO addresses. For APO/FPO shipments, please check with the manufacturer regarding warranty and support issues. |
| Date First Available | June 7, 2009 |

### Warranty & Support

**Warranty, Parts:** Parts

### Feedback

Would you like to give feedback on images or tell us about a lower price?

## Product Description

Johnsen (Tech Chemicals) 6312 R134a 12 Oz Not Ca Compliant

## Customers Who Viewed This Item Also Viewed

Page 1 of 12

Johnsen's (6312-12PK) R-134a A/C Refrigerant - 12 oz., (Pack of 12)
47
$60.76 Prime

Interdynamics (AF-3) Arctic R-134a Ultra Synthetic Freeze Refrigerant - 12 oz.
33
$12.50 Prime

Interdynamics GBM-4 R-134a Air Conditioning Pro Heavy Duty Charging Hose and Gauge
16
$19.43 Prime

Interdynamics HMR-134 High Mileage Vehicle R-134a Refrigerant - 12 oz.
4
$12.29 Prime

## Customers viewing this page may be interested in these sponsored links (What's this?)

- **134a** - supply **134a** produce high quality products www.bluestargtc.com/
- **R-22 Available Now** - Immediate delivery, various sizes Return used gas for cash, get quote www.airgasrefrigerants.com/
- **R134a** - Search Thousands of Catalogs for **R134a** www.globalspec.com/

See a problem with these advertisements? Let us know

## Customer Questions & Answers

0 votes

**Q: Just to clarify, This really can't be shipped to California? and Why not?**

**A:** I'm not aware of that restriction. It may be an amazon issue. We do ship but not via usps.
See all 2 answers



GET IN THE ZONE
AutoZone

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details

# AutoZone/R-134a refrigerant

★★★☆☆ (3 reviews)

AutoZone

**Part Number:** AZ-R134A

**Alternate Part Number:** 301

**This item cannot be shipped to any US State, US Territory or US Military address.**

Like Sign Up to see what your friends like.

Enter your zip code now to get pricing and availability for your store:

GET LOCAL PRICING & AVAILABILITY

Features & Benefits Reviews

### Features & Benefits

R-134a refrigerant lowers the temperature of cars interior by removing the heat.

- For factory installed and retrofitted R-134a automotive air conditioning systems
- ACME threaded top
- Easy to install, perfect for the do-it-yourself user
- Directions included

### Product Details

Part Number:AZ-R134A
Weight:0.9833333333333334 lbs
Charging Hose Included:No
Leak Detection Dye:No
Leak Stop:No
Package Contents:R-134a

Refrigerant:R134a
Weight (oz):12
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

## BUY WITH CONFIDENCE

ABOUT CORE PARTS
Buy online and return core parts to the store to be

FREE SHIPPING
On orders $75 or greater and free shipping to APO,

RETURN ANYWHERE
Buy online, return anywhere

SAME-DAY STORE PICKUP
Save time by buying online and picking up

 CLEARANCE
Get even lower prices on hot items

Shop Now

Walmart
Save money. Live better.

EZ Chill
Refrigerant
134a

# Deluxe R-134a Recharge Hose and Gauge

(2 Customer Reviews) Write a review

**Buy from Walmart** | Shipping & Pickup

**$16.97**

Quantity 1 Add to Cart

Add to my: **Wish List** | **Registry**

**In stock for:**

- Ship to home is not available for this product.
- **Free store pickup** in Washington
  - as soon as today with site to store Check More Stores

Out of stock for shipping to home.

Product availability, styles, promotions and prices may vary between stores and online.

## Item Description

The Deluxe R-134a Recharge Hose and Gauge has a built in valve and gauge so you can attach, measure and fill in three simple steps.

**Deluxe R-134a Recharge Hose and Gauge:**

- Built in valve and gauge
- Attach, measure and fill in three simple steps
- Press trigger to fill and release to measure

*Note that this item cannot be shipped to California. Please refer to California version of the product*

## Specifications

*Top of Page*

| | |
|---|---|
| *Model No.:* | *GBM-3CSPDQ* |
| *Shipping Weight (in pounds):* | *0.82* |
| *Product in Inches (L x W x H):* | *6.0 x 2.0 x 10.0* |
| *Walmart No.:* | *001040964* |

## Pricing Policy

***About Our Prices***

*We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.*

**Sponsored Products**

Robinair 34288 R134a A/C Reco...
**$2,495.00**
Equiptool

FJC (9150) Extreme Cold Ad...
**$6.38**
ToolTopia.com

Uniweld 49016 R134a AUTO RE...
**$21.00**
hvacpw.com

Interdynamics EZ Chill R-134a Refr...
**$32.99**
Advance Auto Parts

Interdynamics AFK-11CS Arctic ...
**$29.99**
JB Tool Sales

 Get even lower prices on hot items

Walmart
Save money. Live better.

# EZ Chill AC Recharge and Retrofit Kit

Be the first to write a review

**Buy from Walmart** | Shipping & Pickup

Online
$44.99

Out of stock online

**Free store pickup** with
**site** to store

– not available in Washington Check More Stores

**Also in stores** Not carried in your local Washington store.

Product availability, styles, promotions and prices may vary between stores and online.

**Sponsored Products**

Robinair 34288 R134a A/C Reco...
$2,495.00
Equiptool

Interdynamics EZ Chill R-134a Refr...
$32.99
Advance Auto Parts

Uniweld 49016 R134a AUTO RE...
$21.00
hvacpw.com

Interdynamics AFK-11CS Arctic ...
$29.99
JB Tool Sales

Robinair 34065
$61.00
plcCenter.com

## Item Description

The EZ Chill AC Recharge and Retrofit Kit includes everything needed to recharge an A/C system or retrofit from R-12 to R-134a.

**EZ Chill AC Recharge and Retrofit Kit:**

- 3 cans of High Mileage R-134a with oil
- Reusable trigger dispenser with built-in gauge
- Retrofit valves needed to convert the high and low pressure ports from R-12 to R-134a
- EPA approved

**Safety Alert:** Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our **returns policy** for more information.

## Specifications

Top of Page

| | |
|---|---|
| Model No.: | RKR-8 |
| Shipping Weight (in pounds): | 3.55 |
| Product in Inches (L x W x H): | 5.0 x 5.0 x 9.0 |
| Walmart No.: | 001094564 |

## Pricing Policy

**About Our Prices**

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.

CLEARANCE

Get even lower prices on hot items

Shop Now

Walmart
Save money. Live better.

# EZ Chill Measure and Charge Can with Inline Gauge

(3 Customer Reviews) Write a review

**Buy from Walmart** | Shipping & Pickup

**$25.97**

Quantity 1 Add to Cart

Add to my: **Wish List** | **Registry**

**In stock for:**

- Ship to home is not available for this product.
- **Free store pickup** in Washington

  - as soon as today with site to store Check More Stores

Out of stock for shipping to home.

Product availability, styles, promotions and prices may vary between stores and online.

## Item Description

Restore lost refrigerant and oil with the EZ Chill Measure and Charge Can with Inline Gauge. This product contains Leak Seal to seal most common leaks in rubber hoses, gaskets and O-rings.

**EZ Chill Measure and Charge Can with Inline Gauge:**

- Restores lost refrigerant and oil
- Contains Leak Sealer to seal most common leaks in rubber hoses, gaskets and O-rings
- Self-dispensing can has filling hose and low-pressure in-line gauge that is reusable
- 18 oz

*Note that this item cannot be shipped to California. Please refer to California version of the product*

> ***Safety Alert:*** *Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our returns policy for more information.*

**Sponsored Products**

Robinair 34288 R134a A/C Reco... $2,495.00 Equiptool

Uniweld 49016 R134a AUTO RE... $21.00 hvacpw.com

Interdynamics EZ Chill R-134a Refr... $32.99 Advance Auto Parts

Interdynamics GBM-2CS Delux... $15.87 JB Tool Sales

## *Specifications*

*Top of Page*

| | |
|---|---|
| *Model No.:* | *MAC-134* |
| *Shipping Weight (in pounds):* | *1.56* |
| *Product in Inches (L x W x H):* | *2.5 x 2.5 x 11.25* |
| *Walmart No.:* | *001027782* |

## *Pricing Policy*

***About Our Prices***

*We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.*

Partner

Hormel
SATISFY HUNGER
IN SECONDS.
Dinty Moore
SAVE $1
Get Coupon

*What's this?*

***Sponsored Links***

Get even lower prices on hot items




Walmart
Save money. Live better.




# High Mileage Vehicle R-134a Refrigerant, 12 oz (California Only)

**Buy from Walmart** | Shipping & Pickup

Online
$14.47

Out of stock online

**Free store pickup** with
**site** to store

– not available in Washington  Check More Stores

**Also in stores**

IN LIMITED STORES

Not carried in your local Washington store.

Product availability, styles, promotions and prices may vary between stores and online.


**Sponsored Products**



Robinair 34288
R134a A/C Reco...
$2,495.00
Equiptool



Uniweld 49016
R134a AUTO RE...
$21.00
hvacpw.com



Interdynamics EZ
Chill R-134a Refr...
$32.99
Advance Auto Parts



Interdynamics
GBM-2CS Delux...
$15.87
JB Tool Sales



ATD R 134a 3pc
Charging Hose S...
$48.99
Eastwood Company


## Item Description

High Mileage Vehicle R-134a Refrigerant is ideal for high mileage and older vehicles. It contains anti-wear additives and lubricant to help restore viscosity.

**High Mileage Vehicle R-134a Refrigerant, 12 oz:**

- Ideal for high mileage and older vehicles
- Contains anti-wear additives and lubricant to help restore viscosity
- Includes Stop Leak to prevent loss of refrigerant
- Self-venting valve
- CARB approved

*Note that this item can only be shipped to California*

> ***Safety Alert:*** *Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our **returns policy** for more information.*

## *Specifications*

*Top of Page*

| | |
|---|---|
| *Model No.:* | *HMR-134CA* |
| *Shipping Weight (in pounds):* | *0.92* |
| *Product in Inches (L x W x H):* | *3.0 x 3.0 x 5.0* |
| *Walmart No.:* | *001069639* |

## *Pricing Policy*

***About Our Prices***

*We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.*

CLEARANCE
Get even lower prices on hot items

Shop Now

Walmart
Save money. Live better.

FJC
EXTREME COL

# FJC FJC9150 Extreme Cold R134a High Performance Refrigerant Additive

Be the first to write a review

Buy from Marketplace
Shipping & Additional Information
When will I get this item?

**$12.03**

**from TonZof**
Retailer Info

**In Stock** and available for

**Ship to home by TonZof add $6.97**
See Shipping and Return Policy

Quantity 1 **Add to Cart**

Add to my: **Wish List**

## Item Description

### Features:

- Install in R134a systems only
- Lowers duct temperature up to 15 percent
- Extends compressor life
- Improves performance
- Friction reducing additives
- Speeds A/C cooling
- Removes system moisture

### Whats In The Box:

- FJC FJC9150 Extreme Cold R134a High Performance Refrigerant Additive

## Specifications

Top of Page

| Model No.: | FJC9150 |
| --- | --- |

## Pricing Policy

**About Our Prices**

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.

**Sponsored Products**

Gunk 96oz Environmental G...
**$40.18**
MSC Industrial S...

1220 Degreaser / Carburetor Clea...
**$44.95**
Ultrasonics Direct

Carburetor & Choke Cleaner 1...
**$3.90**
Del City

carb-medic m4814 carb/choke clean...
**$2.89**
Zoro

Briggs & Stratton Carburetor Or C...
**$7.25**
Equipatron

CLEARANCE
Get even lower prices on hot items

Shop Now

Walmart
Save money. Live better.

REFILL
EZ chill
R-134a
Refrigerant
Plus Oil

# EZ Chill Refill Refrigerant and Oil with Leak Sealer (California Only)

Be the first to write a review

**Buy from Walmart** | Shipping & Pickup

Online
$15.84

Out of stock online

**Free store pickup** with
**site** to store

– not available in Washington Check More Stores

**Also in stores**

IN LIMITED STORES

Not carried in your local Washington store.

Product availability, styles, promotions and prices may vary between stores and online.

**Sponsored Products**

Robinair 34288
R134a A/C Reco...
$2,495.00
Equiptool

Uniweld 49016
R134a AUTO RE...
$21.00
hvacpw.com

Interdynamics EZ
Chill R-134a Refr...
$32.99
Advance Auto Parts

FJC 6042 R134a U
Charge Hose wit...
$21.95
Mutual Screw & S...

FJC FJC9150
Extreme Cold R1...
$12.03
ToolKing.com

## Item Description

EZ Chill Refill Refrigerant and Oil with Leak Sealer helps seal most common leaks in rubber hoses, gaskets and O-rings.

**EZ Chill Refill Refrigerant and Oil with Leak Sealer:**

- 12 oz
- Restores lost refrigerant and oil
- Contains Leak Sealer to seal most common leaks in rubber hoses, gaskets and O-rings
- Refill uses EZ Chill recharge
- CARB approved

*Note that this item can only be shipped to California*

> ***Safety Alert:*** *Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our returns policy for more information.*

## *Specifications*

*Top of Page*

| | |
|---|---|
| *Model No.:* | *SD-134RFLCA* |
| *Shipping Weight (in pounds):* | *0.97* |
| *Product in Inches (L x W x H):* | *2.5 x 2.5 x 8.0* |
| *Walmart No.:* | *001077566* |

## *Pricing Policy*

***About Our Prices***

*We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.*

Get even lower prices on hot items

# EZ Chill R-134a Leak Sealer and Hose

★★ (2 Customer Reviews) Write a review

**Buy from Walmart** Shipping & Pickup

Online
$14.67

Out of stock online

**Free store pickup** with **site** to store

- not available in Washington Check More Stores

**Also in stores**

Not carried in your local Washington store.

Product availability, styles, promotions and prices may vary between stores and online.

**Sponsored Products**

Interdynamics EZ Chill R-134a Refr...
$32.99
Advance Auto Parts

Interdynamics SD-134RFL Ez Chill 1...
$15.06
JB Tool Sales

Interdynamics MAC-134 "Ez Chi...
$27.65
JB Tool Sales

Interdynamics MAC-134RFL 18o...
$21.78
JB Tool Sales

Interdynamics SD-134 14oz Refrige...
$17.26
JB Tool Sales

## Item Description

Keep your equipment running well with the EZ Chill R-134a Leak Sealer and Hose. A single application of UV leak detection dye helps spot future leaks.

**EZ Chill R-134a Leak Sealer and Hose:**

- Includes UV dye
- 10 oz of R-134a to replace lost refrigerant
- Contains Stop Leak to seal most common leaks in rubber hoses, gaskets and O-rings
- Built in disposable dispenser in a shelf saver cap
- Model# RLS-3PDQ

**Safety Alert:** Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our returns policy for more information.

## Specifications

Top of Page

| | |
|---|---|
| Model No.: | RLS-3PDQ |
| Shipping Weight (in pounds): | 0.95 |
| Product in Inches (L x W x H): | 3.0 x 3.0 x 7.0 |
| Walmart No.: | 001048777 |

## Pricing Policy

**About Our Prices**

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.

6/19/2014 Interdynamics R-134a Refrigerant with Leak Sealer - 12 oz. RLS-134/LFXR-13: You've found the best A/C R-134a Refrigerant at Advance Auto Parts

Refrigerant
134a
STOP
LEAK

Hover over the image to zoom in

# Interdynamics R-134a Refrigerant with Leak Sealer - 12 oz.

Part No. RLS-134/LFXR-13 Warranty

4.3 (17 reviews) | View Customer Q&A

Read 17 Reviews

**$17.99** **Disclaimer: This product is not authorized to be shipped/picked-up VI.**

**Quantity** 1

**Check Store availability**

20001

Go

Shipping: Item not available for delivery

Like Sign Up to see what your friends like.

+1 +1 Recommend this on Google

Share this:

0

R-134a Refrigerant with Leak Sealer

**Product Features:**

- For factory installed and retrofitted R-134a auto AC systems
- Leak Sealer helps prevent further loss of refrigerant
- Acme threaded top
- 12 oz.

Back To Top

Size (oz.) 12

Container Type: Aerosol can

**+100** Earn points simply by sharing with your friends!

**Need more help?** **Get advice from friends ›**

**Like this category?** **Follow trending products**

**REVIEW SNAPSHOT®** by PowerReviews

4.3 (based on 17 reviews)

of respondents would recommend this to a friend.

| PROS | CONS | BEST USES |
| --- | --- | --- |
| Easy to use (14) | | Small cars (8) |
| Lightweight (4) | | Trucks (8) |
| Versatile (4) | | Large cars (7) |
| High-performance (3) | | |

CAR & TRUCK: Casual driver (3)

REVIEWER PROFILE: Auto enthusiast (5), Casual driver (5), Mechanic (4), Truck enthusiast (4)

WAS THIS A GIFT?: No (15)

Write a Review Share and Earn points

**Most Liked Positive Review**

**"Good and easy"**

Just charge it for summer time, and just no worries.

VS

**Most Liked Negative Review**

**Avoid Leak Sealer**

Please avoid Leak Sealer. Leak Sealer will work BUT it can cause more damage than fix them. Ask any certified mechanic and leak

http://shop.advanceautoparts.com/p/interdynamics-r-134a-refrigerant-with-leak-sealer-12-oz.-rls-134-lfxr-13/9220005-P?searchTerm=r-134a 1/6



Hover over the image to zoom in

# Interdynamics Arctic Freeze Ultra Synthetic R-134a Refrigerant (19 oz.)

Part No. AF-6 Warranty

4.3 (8 reviews) | View Customer Q&A

Read 8 Reviews

$27.99 Check Availability 20001

Quantity 1 Go

Like Sign Up to see what your friends like.

+1 Recommend this on Google

Share this: 0

Arctic Freeze Ultra Synthetic R-134a with QwikBoost helps eliminate moisture and acid from A/C systems.

**Product Features:**

- Replaces lost refrigerant and oil in an A/C system and is formulated with advanced QwikBoost chemistry
- Formulated to help deliver colder air faster
- Works to eliminate moisture and acid from an A/C system

Back To Top

**+100** Earn points simply by sharing with your friends!

**Need more help?** Get advice from friends › **Like this category?** Follow trending products

**REVIEW SNAPSHOT®** by PowerReviews

4.3 (based on 8 reviews)

of respondents would recommend this to a friend.

| PROS | CONS | BEST USES |
|---|---|---|
| Easy to use (7) | | Large cars (5)<br>Small cars (5)<br>Trucks (4) |

REVIEWER PROFILE: Auto enthusiast (4), Casual driver (4)

WAS THIS A GIFT?: No (7)

Write a Review Share and Earn points

**REVIEWS** Subscribe to Reviews

**Reviewed by 8 customers** Sort by Newest

Displaying reviews 1-8
Back to top

By Jim
from **Santa Fe TN**
About Me **Auto Enthusiast**
Follow me
VERIFIED BUYER
Level 1

4.0 Got the job done 3/4/2014

| PROS | CONS | BEST USES |
|---|---|---|
| Easy To Use | | Large Cars<br>Small Cars |

**Comments about *Interdynamics Arctic Freeze Ultra Synthetic R-134a Refrigerant (19 oz.)*:**

A good product, easy to use.

**WAS THIS A GIFT?:** No

BOTTOM LINE Yes, I would recommend this to a friend

More saving. More doing.

Your Store: **Ne Washington DC #2583** (Change)

Tool & Truck Rental | Installation Services and Repair | Gift Cards | Help

*IDQ* *Model # NR-134a*

# 12 oz. R-134 Refrigerant

Write the First Review +

**$7.97** / each

Item cannot be shipped to the following state(s): CA

IN STOCK AT YOUR LOCAL STORE

Ne Washington DC #2583 — 20 In Stock
Washington, DC 20018 — Aisle 10, Bay 021
Change Pick Up Store +

## PRODUCT OVERVIEW *Model # NR-134a* *Store SKU # 1000035145*

R-134a refrigerant for automotive air conditioning systems

- Replaced lost refrigerant
- Restores cool air
- Meets all R134A industry standards
- Acme threaded top

## SPECIFICATIONS

| | | | |
|---|---|---|---|
| Assembled Depth (in.) | 3 in | Assembled Height (in.) | 5 in |
| Assembled Width (in.) | 3 in | Container type | Canister |
| Fluid Type | Other | Manufacturer Warranty | Manufacturer guarantees product is free from functional defects and if product is defective return to participating retailer for a refund or replacement. |
| Volume (fl. oz.) | 12 | | |

## SHIPPING OPTIONS

Store Exclusive. This item is available for purchase in select stores only.

sign in new guest? my account REDcard
select category search
women men baby kids home patio furniture electronics entertainment toys sports health beauty clearance more
REDcard SAVE 5% + GET FREE SHIPPING TODAY & EVERYDAY - Apply today
find a store Weekly Ad GiftCards registries TargetLists

Target automotive auto care & maintenance

Mouse over image to zoom in.

- View our return policy
- Prices, promotions, styles and availability may vary by store and online.

$26.99 online price

**Sub-Zero Synthetic A/C Booster 18-oz.**

quantity: *
1

× not sold online

find in a store eligible for Store Pickup

add to registry add to list

Write a review

share

Like +1 Tweet Pin it

## more details

overview guest reviews shipping & returns

- Product Color: Clear
- × 3.0 " W
- Capacity Volume: 19.0 Oz.
- Product Weight: 1.82 Lb.

other Info.
- Online Item #: 13795797
- Store Item Number (DPCI): 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
- Made in the USA or Imported

see shipping & returns

see guest reviews

you are here. Target automotive auto care & maintenance Sub-Zero Synthetic A/C Bo...

guests also viewed these items.

Quest Auto Air Conditioner...
$18.99 Store Price
Not sold online
In Store
★ (2)

Quest Auto Air Conditioner...
$10.99
see store for price
Not sold online
In Store

As Seen On TV Fast Brite Auto...
$9.99
★★★★★ (1)

Nu Finish Car Polish...
$9.19
see store for price
Not sold online
In Store
★★★★★ (1)

guests who viewed items you browsed also viewed.

$44.99
Wagan 400-watt Inverter with...

$6.29
see store for price
Turtle Wax Carnauba Cleaner...
Not sold online
In Store

$3.99
see store for price
Armor All Orange Cleaning...
Not sold online
In Store
★★★★★ (7)

$1.99
see store for price
Splash Summer Formula...
Not sold online
In Store

make an always-on-hand run.

get deals ›





sign in
new guest?
my account
REDcard
select category
women
men
baby
kids
home
patio
furniture
electronics
entertainment
toys
sports
health
beauty
clearance
more
REDcard
SAVE 5% + GET FREE SHIPPING
TODAY & EVERYDAY · Apply today
find a store
Weekly Ad
GiftCards
registries
TargetLists

Target automotive auto care & maintenance

Auto Air Conditioner
134a
REFRIGERANT
NET WT. 12 oz. (340 grams)

Mouse over image to zoom in

**$10.99** online price

**Quest Auto Air Conditioner R134a Refrigerant 12-oz.**

quantity:
1

× not sold online

find in a store    eligible for Store Pickup

add to registry    add to list

Write a review

share

Like +1 Tweet Pin it

- View our return policy
- Prices, promotions, styles and availability may vary by store and online

## more details

overview    guest reviews    shipping & returns

- Product Color: Clear
- x 3.0" W
- Capacity Volume: 12.0 Oz.
- Product Weight: 0.92 Lb.

other info.
- Online Item #: 13795793
- Store Item Number (DPCI): 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
- Made in the USA or Imported

**see shipping & returns**

**see guest reviews**

you are here. Target › automotive › auto care & maintenance › Quest Auto Air Conditione...

**guests who viewed items you browsed also viewed.**

$9.99

$14.99

$8.99

$8.99

**guests also viewed these items.**

Quest Auto Air Conditioner...
$18.99 Store Price
Not sold online
In Store
★ (2)

Sub-Zero Synthetic A/C...
$26.99
see store for price
Not sold online
In Store

Nu Finish Car Polish...
$9.19
see store for price
Not sold online
In Store
★★★★★ (1)

Wagan 400-Watt Inverter With...
$44.99

make an always-on-hand run.
get deals ›



sign in
new guest?
my account
REDcard
women men baby kids home patio furniture electronics entertainment toys sports health beauty clearance more
REDcard
SAVE 5% + GET FREE SHIPPING.
TODAY & EVERYDAY - Apply today
find a store
Weekly Ad
GiftCards
registries
TargetLists
back to search results
Target automotive auto care & maintenance
$18.99
Quest Auto Air Conditioner R-134a With Sub-Zero Synthetic A/C Booster 15-oz.
quantity:
1
not sold online
find in a store
eligible for Store Pickup
add to registry
add to list
1.0 (2)
Write a review
share
Like
Tweet
Pin it
NO TOOLS REQUIRED
READY TO USE
R-134a
Sub-Zero
Synthetic
A/C BOOSTER
Mouse over image to zoom in
guests also viewed these items.
Sub-Zero Synthetic A/C...
$26.99
see store for price
Not sold online
Quest Auto Air Conditioner...
$10.99
see store for price
Not sold online
As Seen On TV Fast Brite Auto...
$9.99
(1)
As Seen On TV Wipe...
$14.99
(1)
more details
overview
guest reviews
shipping & returns
Product Color: Clear
x 2.75 W
Capacity Volume: 14.0 Oz.
Product Weight: 1.2 Lb
other info.
Online Item #: 13795795
Store Item Number (DPCI): 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
Made in the USA or Imported
see shipping & returns
see guest reviews
you are here. Target automotive auto care & maintenance Quest Auto Air Conditione...
make an always-on-hand run.
get deals ›
top sellers for auto care & maintenance.

$41.99
Black & Decker Air Station...
(16)

$15.29
22" Rain-X Latitude Wiper...
(3)

$99.90
Wagan Power Dome...
(1)

$23.49
AAA 6-Gauge Booster Cables -...

V8
Refreshers



 Get even lower prices on hot items

# R-134a Refrigerant Can, 12 oz (California only)

Be the first to write a review

**Buy from Walmart** | Shipping & Pickup

Online
$11.97

Out of stock online

**Free store pickup** with
**site** to store

– not available in Washington Check More Stores

**Also in stores**

IN LIMITED STORES

Not carried in your local Washington store.

Product availability, styles, promotions and prices may vary between stores and online.

**Sponsored Products**

Robinair 34288 R134a A/C Reco...
$2,495.00
Equiptool

Uniweld 49016 R134a AUTO RE...
$21.00
hvacpw.com

Interdynamics EZ Chill R-134a Refr...
$32.99
Advance Auto Parts

FJC (6035) R-134a Charge Kit # 60...
$5.08
ToolTopia.com

ATD R 134a 3pc Charging Hose S...
$48.99
Eastwood Company

## Item Description

R-134a Refrigerant Can is for factory installed and retrofitted R-134a automotive air conditioning systems.

**R-134a Refrigerant Can, 12 oz:**

- Ideal for factory installed and retrofitted R-134a automotive air conditioning systems
- ACME threaded top
- Includes self-sealing valve
- CARB approved

**Safety Alert:** Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our returns policy for more information.

## Specifications

Top of Page

| | |
|---|---|
| Model No.: | 301CA |
| Shipping Weight (in pounds): | 0.95 |
| Product in Inches (L x W x H): | 3.0 x 3.0 x 5.0 |
| Walmart No.: | 001069667 |

## Pricing Policy

### About Our Prices

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.



6/19/2014 Quest/R-134a refrigerant with UV leak detector (334) | Freon 134a | AutoZone.com

GET IN THE ZONE
AutoZone

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a Quest/R-134a refrigerant with UV leak detector

# Quest/R-134a refrigerant with UV leak detector

Price: $19.99

Hot Deals & Savings
**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

(0 reviews)

Auto Air Conditioner
R-134a
with
UV
LEAK DETECTOR
NET WT. 12.3 oz. (348 grams)

View Larger

**Part Number:** 334
**This item cannot be shipped to any US State, US Territory or US Military address.**
Pick Up In Store: **In Stock**
Ship To Home:
**Not Available**

Like Sign Up to see what your friends like.

Features & Benefits Reviews

## Features & Benefits

R-134a UV leak detector contains 12 oz of R-134a plus a fluorescent dye to pinpoint leaks within the A/C system. To locate leaks in the A/C system, use with an ultraviolet lamp.

- Contains single application of UV leak detection dye
- For factory installed and retrofitted R-134a automotive air conditioning systems
- Meets SAE J2297
- ACME threaded top

## Product Details

Part Number:334
Weight:0.95 lbs
Charging Hose Included:No
Leak Detection Dye:Yes
Leak Stop:No
Package Contents:R-134a with UV Leak Detector

Refrigerant:R134a
Weight (oz):12.3
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

## BUY WITH CONFIDENCE

ABOUT CORE PARTS
Buy online and return core parts to the store to be

FREE SHIPPING
On orders $75 or greater and free shipping to APO,

RETURN ANYWHERE
Buy online, return anywhere

SAME-DAY STORE PICKUP
Save time by buying online and picking up

http://www.autozone.com/autozone/accessories/Quest-R-134a-refrigerant-with-UV-leak-detector/_/N-261q?itemIdentifier=425681&_requestid=302636 1/2

6/19/2014 Speed Steed R-134a Auto Air Conditioning Refrigerant, 12 oz: Motor Oil, Transmission Fluid & Car Lubricant : Walmart.com

CLEARANCE

Get even lower prices on hot items Shop Now

Walmart
Save money. Live better.

134a

# Speed Steed R-134a Auto Air Conditioning Refrigerant, 12 oz

★★★★ (9 Customer Reviews) Write a review

**Shop at Walmart** Pickup Information

**$9.97**

Quantity 1 Add to Cart

Add to my: **Wish List** | **Registry**

**In Stock for:**

**Free store pickup** at Washington

- as soon as **today** with site to store Check More Stores

Product availability, styles, promotions and prices may vary between stores and online.

## Item Description

Speed Steed R-134a Auto Air Conditioning Refrigerant provides the quality you deserve in a long-lasting refrigerant.

**Speed Steed R-134a Auto Air Conditioning Refrigerant, 12 oz:**

- For factory installed and retrofitted R-134a automotive air conditioning systems
- ACME threaded top

**Safety Alert:** Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our **returns policy** for more information.

## Specifications

Top of Page

| | |
|---|---|
| Model No.: | 1003101 |
| Shipping Weight (in pounds): | 12.76 |
| Product in Inches (L x W x H): | 2.95 x 2.95 x 4.92 |
| Walmart No.: | 001075790 |

## Pricing Policy

**About Our Prices**

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.

**Sponsored Products**

FJC (9150) Extreme Cold Ad...
$6.38
ToolTopia.com

"Auto R134A Refrigerant 30 lb...
$199.99
gpartsinc

MSC69000 Refrigerant Reco...
$672.55
NationalToolWare...

Interdynamics MAC-134 "Ez Chi...
$27.65
JB Tool Sales

Hormel
SATISFY HUNGER IN SECONDS.
Dinty Moore
SAVE $1
Get Coupon

Partner

What's this?

**Sponsored Links**

http://www.walmart.com/ip/Speed-Steed-R-134a-Auto-Air-Conditioning-Refrigerant-12-oz/20440563 1/2

GET IN THE ZONE
AutoZone

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a
Quest/R-134a W/SS display cap refrigerant with Sub-Zero synthetic A/C booster

# Quest/R-134a W/SS display cap refrigerant with Sub-Zero synthetic A/C booster

Price: $27.99

Hot Deals & Savings
**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

(1 review)

NO
TOOLS
REQUIRED
READY TO USE
R-134a
A/C BOOSTER

View Larger

**Part Number:** 343
**This item cannot be shipped to any US State, US Territory or US Military address.**
Pick Up In Store **In Stock**
Ship To Home:
**Not Available**

Like Sign Up to see what your friends like.

Features & Benefits Reviews

### Features & Benefits

Formulated to improve the auto air conditioner s cooling capability and give better heat exchange. It forms a protective film to decrease friction, reduce engine drag, prevent oxidation and sludge formation, and extend the working life of all moving parts, including the compressor.

- R-134a with Sub-Zero synthetic A/C Booster increases cooling capacity by improving lubricity, better heat exchange and overall better efficiency
- Compatible with PAG and Ester oils
- Comes with a built in disposable dispenser in a shelf saver cap
- Reduces engine drag for improved gas mileage

### Product Details

Part Number:343
Weight:1.3 lbs
Charging Hose Included:No

Leak Detection Dye:No
Leak Stop:Yes
Package Contents:R-134a with Sub-Zero Synthetic A/C Booster
Refrigerant:R134a
Weight (oz):15
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

BUY WITH CONFIDENCE



**SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE.** Use Code: **15REV10** See Details

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a Quest/R-134a refrigerant with Sub-Zero synthetic A/C booster

# Quest/R-134a refrigerant with Sub-Zero synthetic A/C booster

**Price:** $21.99

Hot Deals & Savings

**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

☆☆☆☆☆ (0 reviews)

View Larger

**Part Number:** 347

**This item cannot be shipped to any US State, US Territory or US Military address.**

Pick Up In Store: **In Stock**

Ship To Home:

**Not Available**

Like Sign Up to see what your friends like.

Features & Benefits Reviews

### Features & Benefits

R-134a with Sub-Zero synthetic A/C booster increases cooling capacity by improving lubricity, better heat exchange and overall better efficiency.

- Provides up to 18% colder air
- Compatible with all PAG and Ester lubricants
- Comes with a reusable recharge hose with in-line low-pressure gauge and range finder
- Forms a protective film to decrease friction, reduce engine drag, prevent oxidation and sludge formation, and extend the working life of all moving parts, including the compressor

### Product Details

Part Number:347
Weight:1.0 lbs
Charging Hose Included:No
Leak Detection Dye:No

Leak Stop:Yes
Package Contents:R-134a with Sub-Zero Synthetic
Refrigerant:R134a
Weight (oz):13
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

**BUY WITH CONFIDENCE**

ABOUT CORE PARTS FREE SHIPPING RETURN ANYWHERE SAME-DAY STORE PICKUP



SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details ▸

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a
Quest/R-134a refrigerant with Sub-Zero synthetic A/C booster for use with R-134a oil injector

# Quest/R-134a refrigerant with Sub-Zero synthetic A/C booster for use with R-134a oil injector

Enter your zip code now to get pricing and availability for your store:

☆☆☆☆☆ (0 reviews)

**Part Number:** 344
**This item cannot be shipped to any US State, US Territory or US Military address.**

Like Sign Up to see what your friends like.

View Larger

Features & Benefits Reviews

### Features & Benefits

Sub-zero synthetic A/C booster is added to R-134a A/C systems to improve cooling capabilties and provide better heat exchange for colder air. Contains performance additives and it is easy to install.

### Product Details

Part Number:344
Weight:0.15 lbs
Size:2 oz
Quantity:1
Shipping Information: Overnight and Two Day shipping are not available for PO Box, APO/FPO/DPO or US Territory addresses.

Eligible for FREE 2-Day Shipping
learn more | sign in

MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

BUY WITH CONFIDENCE



SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a Quest/R-134a refrigerant with stop leak

# Quest/R-134a refrigerant with stop leak

Price: $17.99

(0 reviews)

Hot Deals & Savings

**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

View Larger

**Part Number:** 308

**This item cannot be shipped to any US State, US Territory or US Military address.**

Pick Up In Store: **In Stock**

Ship To Home

**Not Available**

Like Sign Up to see what your friends like.

**Features & Benefits** Reviews

### Features & Benefits

Product combines R134a refrigerant and Stop Leak to solve your cold air needs as well as the source of the leak.

- Contains 11 oz of R-134a refrigerant
- For factory installed and retrofitted R-134a automotive air conditioning systems
- Stop Leak to prevent further loss of refrigerant
- ACME threaded top

### Product Details

Part Number:308
Weight:1.0 lbs
Charging Hose Included:No
Leak Detection Dye:No
Leak Stop:Yes
Package Contents:R-134a with Stop Leak

Refrigerant:R134a
Weight (oz):12.3
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

## BUY WITH CONFIDENCE

**ABOUT CORE PARTS**
Buy online and return core parts to the store to be

**FREE SHIPPING**
On orders $75 or greater and free shipping to APO,

**RETURN ANYWHERE**
Buy online, return anywhere

**SAME-DAY STORE PICKUP**
Save time by buying online and picking up



6/19/2014 Quest/R-134a high mileage refrigerant (340) | Freon 134a | AutoZone.com

GET IN THE ZONE
AutoZone

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details ›

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a Quest/R-134a high mileage refrigerant

# Quest/R-134a high mileage refrigerant

(0 reviews)

Price: $19.99

Hot Deals & Savings
**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

Auto Air Conditioner
R-134a
HIGH
MILEAGE
VEHICLES
STOP LEAK
FOR VEHICLE A/C OVER 50,000 MILES

View Larger

**Part Number:** 340
**This item cannot be shipped to any US State, US Territory or US Military address.**
Pick Up In Store:
**Not Available**
Ship To Home:
**Not Available**

Like Sign Up to see what your friends like.

**Features & Benefits** Reviews

### Features & Benefits

QUEST High Mileage is formulated to improve performance in older auto air conditioners. In addition to rejuvenating the system seals to Stop Leak, it forms a protective film to decrease friction and extend the working life of all moving parts.

- Safe for all R-134a air conditioner systems
- Contains anti-wear additives and lubricant to help restore viscosity
- Stop Leak to prevent loss of refrigerant
- For High Mileage and older vehicles

### Product Details

Part Number:340
Weight:0.95 lbs
Charging Hose Included:No
Leak Detection Dye:No
Leak Stop:Yes

Package Contents:R-134a Refrigerant and Lubricant with Stop Leak
Refrigerant:R134a
Weight (oz):13
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

## BUY WITH CONFIDENCE

ABOUT CORE PARTS
Buy online and return core

FREE SHIPPING
On orders $75 or greater

RETURN ANYWHERE
Buy online,

SAME-DAY STORE PICKUP
Save time by buying

http://www.autozone.com/autozone/accessories/Quest-R-134a-high-mileage-refrigerant/_/N-261q?itemIdentifier=532238&_requestid=302915 1/2



6/19/2014 Quest/R-134a quick cool refrigerant (306) | Freon 134a | AutoZone.com

GET IN THE ZONE
AutoZone

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details ›

Home › Accessories › Fluids and Chemicals › A/C Charging and Refrigerant/Freon › Freon 134a › Quest/R-134a quick cool refrigerant

# Quest/R-134a quick cool refrigerant

Price: $24.99

(2 reviews)

Hot Deals & Savings

**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

NO TOOLS
R-134a
QUICK
COOL
INCLUDES:
STOP LEAK
OIL CHARGE

**Part Number:** 306

**This item cannot be shipped to any US State, US Territory or US Military address.**

Pick Up In Store:

**Not Available**

Ship To Home:

**Not Available**

Like Sign Up to see what your friends like.

View Larger

**Features & Benefits** Reviews

### Features & Benefits

Quick and easy dispenser, no additional tools required. Charges the air conditioner with refrigerant, adds Stop Leak to prevent leakage, adds lubricant to quiet noisy compressors and improves durability of O-rings.

- 12 oz. of R-134a to replace lost refrigerant
- PAG oil to lubricate and quiet worn and noisy compressors
- Contains Stop Leak to seal most common leaks in rubber hoses, gaskets, and O-rings
- Built in disposable dispenser in a shelf saver cap

### Product Details

Part Number:306
Weight:1.25 lbs
Charging Hose Included:Yes
Leak Detection Dye:No
Leak Stop:Yes

Package Contents:R-134a with Stop Leak, Oil Charge and O-ring Conditioner
Refrigerant:R134a
Weight (oz):14
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

## BUY WITH CONFIDENCE

**ABOUT CORE PARTS** Buy online and return core

**FREE SHIPPING** On orders $75 or greater

**RETURN ANYWHERE** Buy online,

**SAME-DAY STORE PICKUP** Save time by buying

http://www.autozone.com/autozone/accessories/Quest-R-134a-quick-cool-refrigerant/_/N-261q?itemIdentifier=298536&_requestid=303243 1/2



6/19/2014 Quest/R-134a plus refrigerant (307) | Freon 134a | AutoZone.com

GET IN THE ZONE
AutoZone

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a Quest/R-134a plus refrigerant

# Quest/R-134a plus refrigerant

Price: $19.99

Hot Deals & Savings

**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

☆☆☆☆☆ (0 reviews)

QUICK AND EASY
R-134a
PLUS
INCLUDES:
STOP LEAK
OIL CHARGE
O-RING CONDITIONER
COOL DOWN
LEAK FINDER

View Larger

**Part Number:** 307
**This item cannot be shipped to any US State, US Territory or US Military address.**
Pick Up In Store: **In Stock**
Ship To Home:
**Not Available**

Like Sign Up to see what your friends like.

Features & Benefits Reviews

### Features & Benefits

R-134a plus complete system treatment includes Stop Leak, oil charge, O-Ring conditioner, cool down and leak finder.

- Product contains 11 Oz. of R-134a, 2 Oz. of PAG oil and O-Ring conditioner.
- 1 oz. of cool down to improve cooling up to 10°
- Stop Leak and red dye to mark leaks that need repair
- ACME threaded top

### Product Details

Part Number:307
Weight:1.05 lbs
Charging Hose Included:No
Leak Detection Dye:Yes
Leak Stop:Yes
Package Contents:R-134a, Stop Leak, Oil Charge, O-ring Conditioner, Cool Down, Leak Finder

Refrigerant:R134a
Weight (oz):14
MSDS Information: Click to View

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

BUY WITH CONFIDENCE

ABOUT CORE PARTS
Buy online and return core

FREE SHIPPING
On orders $75 or greater

RETURN ANYWHERE
Buy online,

SAME-DAY STORE PICKUP
Save time by buying

http://www.autozone.com/autozone/accessories/Quest-R-134a-plus-refrigerant/_/N-261q?itemIdentifier=233038&_requestid=303152 1/2

Get even lower prices on hot items

Walmart
Save money. Live better.

# Professional Formula R134a Refrigerant with Advance Stop Leak, 12 oz

Be the first to write a review

**Buy from Walmart** | Shipping & Pickup

Online
**$13.81**

Quantity 1 Add to Cart

Add to my: **Wish List** | **Registry**

**In stock for:**

- **Free shipping available** on orders over $50
  When will it arrive?
- **Free store pickup** with
  site to store
  – not available in Washington Check More Stores

**Also in stores** Not carried in your local Washington store.

**Sponsored Products**

FJC (9150) Extreme Cold Ad...
$6.38
ToolTopia.com

FJC6785 R134a Aluminum Manifo...
$90.98
NationalToolWare...

Uniweld R12 to R134A Hose Con...
$89.99
Northern Tool

Product availability, styles, promotions and prices may vary between stores and online.

## Item Description

Professional Formula R134a Refrigerant with Advance Stop Leak restores lost refrigerant and oil while quickly bringing back cool air and lubricating AC compressor.

**Professional Formula R134a Refrigerant with Advance Stop Leak, 12 oz:**

- Restores lost refrigerant and oil
- Quickly brings back cool air
- Lubricates AC compressor
- Contains 2-in-1 MAX SEAL chemistry
- 25 percent more sealing agents to stop leaks and recondition rubber O-rings, gasket and hoses
- Anti-corrosion additives reduce moisture and acid build-up to shield against metal leaks
- Model# ACP-105

**Safety Alert:** Due to federal restrictions, this item must be returned in its original package, or with secure ORM-D packaging obtained from the post office. We advise keeping the original packaging for at least 90 days. See our **returns policy** for more information.

## Specifications

Top of Page

| | |
|---|---|
| Battery Type: | Does Not Contain a Battery |
| Model No.: | ACP-105 |
| Shipping Weight (in pounds): | 1.0 |
| Product in Inches (L x W x H): | 2.75 x 2.75 x 7.25 |
| Walmart No.: | 551678731 |

## Pricing Policy

**About Our Prices**

We strive to provide you with the lowest prices possible on Walmart.com as well as in our stores. However, sometimes a price online does not match the price in a store. Walmart.com's prices may be either higher or lower than local store prices. Prices may also vary between stores. Our local stores do not honor Walmart.com pricing or competitor advertisements from outside of a store's local trade territory.

6/19/2014 Interdynamics EZ Chill R-134a Refrigerant Plus Oil with Leak Sealer (18 oz.) MAC-134: Choose the best A/C R-134a Refrigerant at Advance Auto Parts

Hover over the image to zoom in

# Interdynamics EZ Chill R-134a Refrigerant Plus Oil with Leak Sealer (18 oz.)

Part No. MAC-134 Warranty

4.4 (79 reviews) | View Customer Q&A

Read 79 Reviews

$32.99 Check Store availability

Quantity 1 20001 Go

Shipping. Item not available for delivery

Like Sign Up to see what your friends like.

+1 +2 Recommend this on Google

Share this:

5

EZ Chill R-134a Refrigerant Plus Oil and Leak Sealer with Removable Gauge assembly

**Product Features:**

- Restores lost refrigerant and oil
- Contains Leak Sealer to help seal most common leaks in rubber hoses, gaskets and O-rings
- Self-dispensing can has filling hose and low-pressure in-line gauge that is reusable

Back To Top

| | |
|---|---|
| Charging Hose Included: | Yes |
| Container Material: | STEEL/ALUM |
| Container Size: | 18 oz |
| Container Type: | CAN |

+100 Earn points simply by sharing with your friends!

**Need more help?** Get advice from friends ›

**Like this category?** Follow trending products

**REVIEW SNAPSHOT®** by PowerReviews

4.4 (based on 79 reviews)

of respondents would recommend this to a friend.

| PROS | CONS | BEST USES |
|---|---|---|
| Easy to use (70) | Flimsy (6) | Small cars (43) |
| High-performance (18) | Short hose (3) | Trucks (32) |
| Lightweight (17) | | Large cars (31) |
| Durable (13) | | |
| Versatile (12) | | |

| | |
|---|---|
| CAR & TRUCK: | Casual driver (11), Auto enthusiast (8), Mechanic (4), Truck enthusiast (4) |
| REVIEWER PROFILE: | Casual driver (32), Auto enthusiast (18), Mechanic (6), Competitive driver (4), Truck enthusiast (4) |
| WAS THIS A GIFT?: | No (64) |

Write a Review Share and Earn points

**Most Liked Positive Review**

**Beats garage replacing compressor, etc.**

My system stopped taking the freon at about 37 psi, so that is where I left it .... in the blue Filled zone on the gauge. Chart on can said to shoot...

VS

**Most Liked Negative Review**

**No benefit of using, same as before...**

Not sure if its benefited.. its same as before or after. Too hot outside, 100 degree, my air is cooling, but not cold as it should be. when its

http://shop.advanceautoparts.com/p/interdynamics-ez-chill-r-134a-refrigerant-plus-oil-with-leak-sealer-18-oz.-mac-134/7010015-P?searchTerm=r-134a 1/6



GET IN THE ZONE® AutoZone®

SAVE 15% PLUS GET A $10 GIFT CARD ON SHIP TO HOME ORDERS OF $100 OR MORE. Use Code: 15REV10 See Details ›

Home Accessories Fluids and Chemicals A/C Charging and Refrigerant/Freon Freon 134a Quest/R-134a 1st charge refrigerant with ICE32

# Quest/R-134a 1st charge refrigerant with ICE32

Price: $19.99

Hot Deals & Savings

**FREE Shipping**
On orders $75 or Greater and FREE Shipping to APO, FPO, DPO addresses. See Details

☆☆☆☆☆ (0 reviews)

View Larger

**Part Number:** 350
**This item cannot be shipped to any US State, US Territory or US Military address.**
Pick Up In Store: **In Stock**
Ship To Home:
**Not Available**

Like Sign Up to see what your friends like.

Features & Benefits Reviews

### Features & Benefits

Helps prevent compressor failure caused by oil starvation. Contains ICE32™ advanced chemistry to improve and extend compressor life.

- 1st charge lubricates the compressor immediately as it begins to operate
- Compatible with all PAG and Ester oils
- Absorbs moisture to help prevent corrosion of system components
- ACME threaded top

### Product Details

Part Number:350
Weight:1.0 lbs
Charging Hose Included:No
Leak Detection Dye:No
Leak Stop:No
Package Contents:R-134a with ICE32™

Refrigerant:R134a
Weight (oz):12.5

## RELATED ITEMS

### Related Products

- A/C Repair

## OTHER CUSTOMERS ALSO VIEWED

BUY WITH CONFIDENCE

ABOUT CORE PARTS
Buy online and return core parts to the store to be refunded the price.

FREE SHIPPING
On orders $75 or greater and free shipping to APO, FPO, and DPO addresses.

RETURN ANYWHERE
Buy online, return anywhere
Get More Details

SAME-DAY STORE PICKUP
Save time by buying online and picking up items in store.



# EXHIBIT 3

**PART II. – TRADE AND RELATED INFORMATION--*Continued***

II-7. **U.S. Imports by Classification** – Were all of your firm's imports for the POI classified in HTS 2903.39.2020?

☐ Yes – Skip to II-8. ☐ No – Fill out the table below.

| HTS Item 2903.39.2030 | | | | | |
|---|---|---|---|---|---|
| **Period** | **2011** | **2012** | **2013** | **Jan.-June 2013** | **Jan.-June 2014** |
| **Quantity** (*in short tons*) | | | | | |
| **Value** (*in $1,000*) | | | | | |

| Other HTS Item (Please List HTS): ______ | | | | | |
|---|---|---|---|---|---|
| **Period** | **2011** | **2012** | **2013** | **Jan.-June 2013** | **Jan.-June 2014** |
| **Quantity** (*in short tons*) | | | | | |
| **Value** (*in $1,000*) | | | | | |

# 1-73

# Questionnaire Instructions

# Domestic Producers' Questionnaires (selected pages)

# Importers' Questionnaires (selected pages)



# INSTRUCTION BOOKLET

## GENERAL INFORMATION, INSTRUCTIONS, AND DEFINITIONS FOR COMMISSION QUESTIONNAIRES

### 1,1,1,2-TETRAFLUOROETHANE FROM CHINA
### Investigation Nos. 701-TA-509 and 731-TA-1244 (Final)

*Further information.--If you have any questions concerning the enclosed questionnaire(s) or other matters related to this proceeding, you may contact the following members of the Commission's staff (Fax 202-205-3205):*

*Justin Enck, investigator (202-205-3363; Email Justin.enck@usitc.gov) regarding general questions and trade and related information;*

*David Boyland, auditor (202-708-4725; Email david.boyland@usitc.gov) regarding financial information; and*

*Cindy Cohen, economist (202-205-3230; Email cindy.cohen@usitc.gov) regarding pricing, market, and related information.*

## GENERAL INFORMATION

***Background***.--This proceeding was instituted in response to a petition filed on October 22, 2013, by Mexichem Fluor Inc., St. Gabriel, LA. Countervailing and antidumping duties may be assessed on the subject imports as a result of this proceeding if the Commission makes an affirmative determination of injury, threat, or material retardation, and if the U.S. Department of Commerce makes an affirmative determination of subsidization and/or dumping.

Questionnaires and other information pertinent to this proceeding are available at **http://wwwqa.usitc.gov/trade_remedy/731_ad_701_cvd/investigations/2014/tetrafluoroethane_from_china/finalphase.htm.** Please direct questions regarding the questionnaire and correspondence to Justin Enck (202-205-3363, justin.enck@usitc.gov) at the U.S. International Trade Commission, 500 E Street, SW, Washington, D.C. 20436. Correspondence may be sent to the above address or via FAX to 202-205-3205. Hearing-impaired individuals can obtain information regarding this proceeding via the Commission's TDD terminal (202-205-1810).

***Due date of questionnaire(s)***.--Please submit the completed questionnaire(s) to the United States International Trade Commission so as to be received by no later than **August 15, 2014**. Because Commission staff might contact you with questions during the course of the proceeding, save the final version of the document(s) and retain all files and worksheets associated with the completed questionnaire(s). Please also retain a copy of the final document that you submit.

***Service of questionnaire response(s)***.--In the event that your firm is a party to this proceeding, you are required to serve a copy of the questionnaire(s), once completed, on parties to the proceeding that are subject to administrative protective order (see 19 CFR 207.7). A list of such parties is maintained by the Commission's Secretary and may be obtained by calling 202-205-1803. A certificate of service must accompany the copy of the completed questionnaire(s) you submit (see 19 CFR 207.7).

***Confidentiality***.--The commercial and financial data furnished in response to the enclosed questionnaire(s) that reveal the individual operations of your firm will be treated as confidential by the Commission to the extent that such data are not otherwise available to the public and will not be disclosed except as may be required by law (see 19 U.S.C. 1677f). Such confidential information will not be published in a manner that will reveal the individual operations of your firm; however, general characterizations of numerical business proprietary information (such as discussion of trends) will be treated as confidential business information only at the request of the submitter for good cause shown.

***Verification*.--The information submitted in the enclosed questionnaire(s) is subject to audit and verification by the Commission. To facilitate possible verification of data, please keep all of your files, worksheets, and supporting documents used in the preparation of the questionnaire response(s).**

**GENERAL INFORMATION--*Continued***

***Release of information***.--The information provided by your firm in response to the questionnaire(s), as well as any other business proprietary information submitted by your firm to the Commission in connection with this proceeding, may become subject to, and released under, the administrative protective order provisions of the Tariff Act of 1930 (19 U.S.C. 1677f) and section 207.7 of the Commission's Rules of Practice and Procedure (19 CFR 207.7). This means that certain lawyers and other authorized individuals may temporarily be given access to the information for use in connection with this proceeding or other import-injury proceedings conducted by the Commission on the same or similar merchandise; those individuals would be subject to severe penalties if the information were divulged to unauthorized individuals.

**INSTRUCTIONS**

***Answer all questions***.--Do not leave any question or section blank unless a questionnaire expressly directs you to skip over certain questions or sections. If the answer to any question is zero or "none", enter the number zero or "none". **If information is not readily available from your records in exactly the form requested, furnish carefully prepared estimates.** Answers to questions and any necessary comments or explanations should be entered in the space provided or in a separate MS Word document submitted along with the questionnaire(s). If your firm is completing more than one questionnaire in connection with this proceeding (i.e., a producer, importer, and/or purchaser questionnaire), you need not respond to duplicated questions in the questionnaires.

***Consolidate all U.S. establishments***.--Report the requested data for your establishment(s) located in the United States. **Firms operating more than one establishment should combine the data for all establishments into a single report.**

***Electronic completion*.—Please electronically enter your responses into the Commission provided MS Word document**. The MS Word versions of all the questionnaires in this proceeding are available online at the ITC web page or may be obtained directly from the Commission's Investigator, Justin Enck (202-205-3363, justin.enck@usitc.gov)

***Electronic submission*.--** Responding firms should submit their questionnaire responses electronically in MS Word format. The submission of questionnaire responses in the MS Word format allows the Commission to electronically extract data from questionnaires and thus, compile, assess, and analyze submitted data more efficiently and promptly. Furthermore, the electronic submission of questionnaires completed in MS Word facilitates the Commission's ability to produce

documents that comply with Section 508 of the Rehabilitation Act of 1973. There are three electronic submissions options detailed below.

## OPTIONS FOR FILING

This questionnaire is available as a "fillable" form in MS Word format on the Commission's website at **http://wwwqa.usitc.gov/trade_remedy/731_ad_701_cvd/investigations/2014/tetrafluoroethane_from_china/finalphase.htm**. ***Please do not attempt to modify the format or permissions of the questionnaire document***. Please complete the questionnaire and submit it electronically using one of the methods noted below. If your firm is unable to complete the MS Word questionnaire or cannot use one of the electronic methods of submission, please contact the Commission for further instructions.

• **Upload via Secure Drop Box.**—Upload the completed questionnaire in MS Word format along with a scanned copy of the signed certification page (page 1) through the Commission's secure upload facility:

***Web address***: https://dropbox.usitc.gov/oinv/ ***Pin***: **R134**

• **E-mail**.—E-mail your questionnaire to the investigator identified on page 1 of the Instruction Booklet; include a scanned copy of the signed certification page (page 1). Type the following in the e-mail subject line: **BPI Questionnaire, Inv. Nos. 701-TA-509 and 731-TA-1244 (Final)**. *Please note that submitting your questionnaire by e-mail may subject your firm's business proprietary information to transmission over an unsecure environment and to possible disclosure. If you choose this option, the Commission warns you that any risk involving possible disclosure of such information is assumed by the submitter and not by the Commission.*

• **Compact disc (CD)**.—Copy your MS Word questionnaire onto a CD. Also please include a signed certification page (page 1), and mail to the U.S. International Trade Commission, 500 E. Street, SW, Washington, DC 20024. *It is strongly recommended that you use an* ***overnight mail service****. U.S. mail sent to government offices undergoes additional processing which not only results in substantial delays in delivery but may also damage CDs.*

Note: If you are a party to the proceeding, and service of the questionnaire is required, such service should be made in paper form

**DEFINITIONS**

***1,1,1,2-Tetrafluoroethane ("R-134a")***.-- 1,1,1,2-Tetrafluoroethane, R-134a, or its chemical equivalent, regardless of form, type, or purity level. The chemical formula for 1,1,1,2-tetrafluoroethane is $CF_3$-$CH_2F$, and the Chemical Abstracts Service ("CAS") registry number is CAS 811-97-2.

1,1,1,2-Tetrafluoroethane is sold under a number of trade names including Klea 134a and Zephex 134a (Mexichem Fluor); Genetron 134a (Honeywell); Suva 134a, Dymel 134a, and Dymel P134a (DuPont); Solkane 134a (Solvay); and Forane 134a (Arkema). Generically, 1,1,1,2-tetrafluoroethane has been sold as Fluorocarbon 134a, R-134a, HFC-134a, HF A-134a, Refrigerant 134a, and UN3159.

Merchandise covered by the scope of this investigation is currently classified in the Harmonized Tariff Schedule of the United States ("HTSUS") at subheading 2903.39.2020. Although the HTS subheading and CAS registry number are provided for convenience and customs purposes, the written description of the scope is dispositive.

***Firm***.--An individual proprietorship, partnership, joint venture, association, corporation (including any subsidiary corporation), business trust, cooperative, trustee in bankruptcy, or receiver under decree of any court.

***Related firm***.--A firm that your firm solely or jointly owned, managed, or otherwise controlled; a firm that solely or jointly owned, managed, or otherwise controlled your firm; and/or a firm that was solely or jointly owned, managed, or otherwise controlled by a firm that also solely or jointly owned, managed, or otherwise controlled your firm.

***Establishment***.--Each facility of a firm involved in the production, importation, and/or purchase of R-134a (as defined above), including auxiliary facilities operated in conjunction with (whether or not physically separate from) such facilities.

***United States***.--For purposes of this proceeding, the 50 States, Puerto Rico, the U.S. Virgin Islands, and the District of Columbia.

***Importer***.--Any person or firm engaged, either directly or through a parent company or subsidiary, in importing R-134a (as defined above) into the United States from a foreign manufacturer or through its selling agent.

***Imports***.--Those products identified for Customs purposes as imports for consumption for which your firm was the importer of record (i.e., was responsible for paying any import duty) or consignee (i.e., to which the merchandise was first delivered).

***Import quantities***.--Quantities reported should be net of returns.

**DEFINITIONS—*Continued***

***Import values***.--Values reported should be landed, duty-paid values at the U.S. port of entry, including ocean freight and insurance costs, brokerage charges, and import duties (i.e., all charges except inland freight in the United States).

***Purchaser***.--Any person or firm engaged, either directly or through a parent company or subsidiary, in purchasing R-134a (as defined above) from another firm that produces, imports, or otherwise distributes R-134a.

***Purchases***.--Purchases from all sources, NOT including direct imports from foreign sources located outside of the United States (which should be reported in an importer questionnaire).

***Purchase quantities***.--Quantities reported should be net of returns.

***Purchase values***.--Values reported should be net values (i.e., gross purchase values less all discounts, allowances, rebates, and the value of returned goods), delivered to your U.S. receiving point.

***Shipments***.--Shipments of products produced in or imported by your establishment(s). Include shipments to the contracting firm of product produced by your firm under a toll agreement.

***Shipment quantities***.—Quantities reported should be net of returns.

***Shipment values***.—Values reported should be net values (i.e., gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods) in U.S. dollars, f.o.b. your point of shipment in the United States.

***Types of shipments***:

***U.S. shipments***.--Commercial shipments, internal consumption, and transfers to related firms within the United States.

***Commercial shipments***.--Shipments, other than internal consumption and transfers to related firms, within the United States.

***Internal consumption***.--Product consumed internally by your firm.

***Transfers to related firms***.--Shipments made to related domestic firms.

***Export shipments***.--Shipments to destinations outside the United States, including shipments to related firms.

***Inventories***.--Finished goods inventory, not raw materials or work-in-progress.

**DEFINITIONS**--***Continued***

**The following definitions apply only to the PRODUCER QUESTIONNAIRE.**

***Average production capacity***.--The level of production that your establishment(s) could reasonably have expected to attain during the specified periods. Assume normal operating conditions (i.e., using equipment and machinery in place and ready to operate; normal operating levels (hours per week/weeks per year) and time for downtime, maintenance, repair, and cleanup; and a typical or representative product mix).

***Toll agreement***.--Agreement between two firms whereby the first firm furnishes the raw materials and the second firm uses the raw materials to produce a product that it then returns to the first firm with a charge for processing costs, overhead, etc.

***Production***.--All production in your U.S. establishment(s), including production consumed internally within your firm and production for another firm under a toll agreement.

***PRWs***.--Production and related workers, including working supervisors and all nonsupervisory workers (including group leaders and trainees) engaged in fabricating, processing, assembling, inspecting, receiving, storage, handling, packing, warehousing, shipping, trucking, hauling, maintenance, repair, janitorial and guard services, product development, auxiliary production for plant's own use (e.g., power plant), recordkeeping, and other services closely associated with the above production operations.

***Average number employed***.--Add the number of employees, both full-time and part-time, for the 12 pay periods ending closest to the 15th of the month and divide that total by 12. **For the January-June periods, calculate similarly and divide by 6**.

***Hours worked***.--Include time paid for sick leave, holidays, and vacation time. Include overtime hours actually worked; do not convert overtime pay to its equivalent in straight-time hours.

***Wages paid***.--Total wages paid before deductions of any kind (e.g., withholding taxes, old-age and unemployment insurance, group insurance, union dues, bonds, etc.). Include wages paid directly by your firm for overtime, holidays, vacations, and sick leave.

***Fiscal year***.--The 12-month period between settlement of your firm's financial accounts.

***Purchases other than direct imports***.--Purchases from U.S. producers, U.S. importers, and other U.S. sources.

OMB No. 3117-0016/USITC No. 14-E-367; Expiration Date: 6/30/2017
(No response is required if currently valid OMB control number is not displayed)

---

# U.S. PRODUCERS' QUESTIONNAIRE

## 1,1,1,2-TETRAFLUOROETHANE FROM CHINA

---

**This questionnaire must be received by the Commission by no later than August 15, 2014**

***See the Instruction Booklet for filing instructions.***

The information called for in this questionnaire is for use by the United States International Trade Commission in connection with its countervailing duty and antidumping investigations concerning 1,1,1,2-Tetrafluoroethane ("R-134a") from China (Inv. Nos. 701-TA-509 and 731-TA-1244 (Final)). The information requested in the questionnaire is requested under the authority of the Tariff Act of 1930, title VII. This report is mandatory and failure to reply as directed can result in a subpoena or other order to compel the submission of records or information in your firm's possession (19 U.S.C. § 1333(a)).

**Name of firm** ______________________________

**Address** ______________________________

**City** ______________________ **State** ________ **Zip Code** ______________

**World Wide Web address** ______________________________

Has your firm produced **R-134a** (as defined in the instruction booklet) at any time since January 1, 2011?

☐ **NO** (Sign the certification below and promptly return only this page of the questionnaire to the Commission)

☐ **YES** (Read the instruction booklet carefully, complete all parts of the questionnaire, and return the entire questionnaire to the Commission so as to be received by the date indicated above)

**Return questionnaire via the U.S. International Trade Commission *Drop Box* by clicking on the following link**: https://dropbox.usitc.gov/oinv/. **(use the following PIN: R134)**

## CERTIFICATION

***I certify that the information herein supplied in response to this questionnaire is complete and correct to the best of my knowledge and belief and understand that the information submitted is subject to audit and verification by the Commission.***

***By means of this certification I also grant consent for the Commission, and its employees and contract personnel, to use the information provided in this questionnaire and throughout this proceeding in any other import-injury proceedings conducted by the Commission on the same or similar merchandise.***

***I acknowledge that information submitted in this questionnaire response and throughout this proceeding may be used by the Commission, its employees, and contract personnel who are acting in the capacity of Commission employees, for developing or maintaining the records of this proceeding or related proceedings for which this information is submitted, or in internal audits and proceedings relating to the programs and operations of the Commission pursuant to 5 U.S.C. Appendix 3. I understand that all contract personnel will sign non-disclosure agreements.***

______________________ ______________________ ______________________

*Name of Authorized Official* *Title of Authorized Official* *Date*

*Phone:* ______________________

______________________ ______________________

*Signature* *Email address*

*Fax:* ______________________

*Business Proprietary*

**PART III.--FINANCIAL INFORMATION**

Address questions on this part of the questionnaire to **David Boyland (202-708-4725, david.boyland@usitc.gov**).

III-1. **Contact information.--** Please identify the responsible individual and the manner by which Commission staff may contact that individual regarding the confidential information submitted in part III.

| Name | |
|---|---|
| Title | |
| Email | |
| Telephone | |
| Fax | |

III-2. **Accounting system.--**Briefly describe your firm's financial accounting system.

A. When does your firm's fiscal year end (month and day)? ___________________
If your firm's fiscal year changed during the data-collection period, explain below:

______________________________________________________________________

B.1. Describe the lowest level of operations (e.g., plant, division, company-wide) for which financial statements are prepared that include R-134a:

______________________________________________________________________

2. Does your firm prepare profit/loss statements for the R-134a:
☐ Yes ☐ No

3. How often did your firm (or parent company) prepare financial statements (including annual reports, 10Ks)? Please check relevant items below.
☐ Audited, ☐ unaudited, ☐ annual reports, ☐ 10Ks, ☐ 10 Qs,
☐ Monthly, ☐ quarterly, ☐ semi-annually, ☐ annually

4. Accounting basis: ☐ GAAP, ☐ cash, ☐ tax, or ☐ other comprehensive basis of accounting (specify) ______________________________________

5. If your firm has transfer sales of R-134a to related parties, please describe transfer valuation and, to the extent these transfers include sales to foreign related parties, the impact of IRS transfer pricing rules ___________________________

*Note: The Commission may request that your company submit copies of its financial statements, including internal profit-and-loss statements for the division or product group that includes **R-134a**, as well as those statements and worksheets used to compile data for your firm's questionnaire response.*

III-3. **Cost accounting system.--**Briefly describe your firm's cost accounting system (*e.g.*, standard cost, job order cost, *etc.*).

______________________________________________________________________

III-4. **Allocation basis.--**Briefly describe your firm's allocation basis, if any, for COGS, SG&A, and interest expense and other income and expenses.

______________________________________________________________________

**PART IV.--PRICING AND RELATED INFORMATION**

Further information on this part of the questionnaire can be obtained from Cindy Cohen (202-205-3230, cindy.cohen@usitc.gov).

IV-1. **Contact information.**--Please identify the individual that Commission staff may contact regarding the confidential information submitted in part IV.

| Name | |
|---|---|
| Title | |
| Email | |
| Telephone | |
| Fax | |

**PRICE DATA**

IV-2. This question requests quarterly quantity and value data for your firm's commercial shipments to unrelated U.S. customers since January 1, 2011 of the following products produced by your firm.

**R-134a in bulk.**

***Product 1*.--** R-134a in bulk sold to distributors.

***Product 2*.--** R-134a in bulk sold to retailers.

***Product 3*.--** R-134a in bulk sold to end users for foam expansion, foam blowing, and aerosol applications.

**R-134a in 30-pound containers.**

***Product 4*. --**R-134a in 30-pound containers sold to distributors.

***Product 5*. --**R-134a in 30-pound containers sold to retailers.

**R-134a in 12-ounce containers.**

***Product 6*. --**R-134a in 12-ounce containers sold to distributors.

***Product 7*. --**R-134a in 12-ounce containers sold to retailers.

**Please note that values should be f.o.b., U.S. point of shipment and should not include U.S.-inland transportation costs. Values should reflect the *final net* amount paid to your firm (i.e., should be net of all deductions for discounts or rebates). See instruction booklet**.

During January 2011-June 2014, did your firm produce and sell to unrelated U.S. customers any of the above listed products (or any products that were competitive with these products)?

| | |
|---|---|
| ☐ | **Yes**.--Please complete the following pricing data table as appropriate. |
| ☐ | **No.**--Skip to question IV-3. |

OMB No. 3117-0016/USITC No. 14-2-368; Expiration Date: 6/30/2017
(No response is required if currently valid OMB control number is not displayed)

---

## U.S. IMPORTERS' QUESTIONNAIRE

## 1,1,1,2-TETRAFLUOROETHANE FROM CHINA

---

**This questionnaire must be received by the Commission by no later than August 15, 2014**

***See the Instruction Booklet for filing instructions.***

The information called for in this questionnaire is for use by the United States International Trade Commission in connection with its countervailing duty and antidumping investigations concerning 1,1,1,2-Tetrafluoroethane ("R-134a") from China (Inv. Nos. 701-TA-509 and 731-TA-1244 (Final)). The information requested in the questionnaire is requested under the authority of the Tariff Act of 1930, title VII. This report is mandatory and failure to reply as directed can result in a subpoena or other order to compel the submission of records or information in your firm's possession (19 U.S.C. § 1333(a)).

**Name of firm** ______________________________

**Address** ______________________________

**City** ______________ **State** ______ **Zip Code** ______________

**World Wide Web address** ______________________________

Has your firm imported **R-134a** (as defined in the instruction booklet) from any country at any time since January 1, 2011?

☐ **NO** (Sign the certification below and promptly return only this page of the questionnaire to the Commission)

☐ **YES** (Read the instruction booklet carefully, complete all parts of the questionnaire, and return the entire questionnaire to the Commission so as to be received by the date indicated above)

**Return questionnaire via the U.S. International Trade Commission *Drop Box* by clicking on the following link**: https://dropbox.usitc.gov/oinv/. **(use the following PIN: R134)**

## CERTIFICATION

***I certify that the information herein supplied in response to this questionnaire is complete and correct to the best of my knowledge and belief and understand that the information submitted is subject to audit and verification by the Commission.***

***By means of this certification I also grant consent for the Commission, and its employees and contract personnel, to use the information provided in this questionnaire and throughout this proceeding in any other import-injury proceedings conducted by the Commission on the same or similar merchandise.***

***I acknowledge that information submitted in this questionnaire response and throughout this proceeding may be used by the Commission, its employees, and contract personnel who are acting in the capacity of Commission employees, for developing or maintaining the records of this proceeding or related proceedings for which this information is submitted, or in internal audits and proceedings relating to the programs and operations of the Commission pursuant to 5 U.S.C. Appendix 3. I understand that all contract personnel will sign non-disclosure agreements.***

| ______________________ | ______________________ | ______________________ |
|---|---|---|
| ***Name of Authorized Official*** | ***Title of Authorized Official*** | ***Date*** |
| ______________________ | ***Phone:*** ______________________ | ______________________ |
| ***Signature*** | ***Fax:*** ______________________ | ***Email address*** |

*Business Proprietary*

**PART III.-- PRICING AND RELATED INFORMATION**

Further information on this part of the questionnaire can be obtained from Cindy Cohen (202-205-3230, cindy.cohen@usitc.gov).

III-1. **Contact information.**-- Please identify the responsible individual and the manner by which Commission staff may contact that individual regarding the confidential information submitted in part III.

| Name | |
|---|---|
| Title | |
| Email | |
| Telephone | |
| Fax | |

**PRICE DATA**

III-2. This question requests quarterly quantity and value data for the following products your firm imported from China and sold to unrelated U.S. customers:

**R-134a in bulk.**

***Product 1*.--** R-134a in bulk sold to distributors.

***Product 2*.--** R-134a in bulk sold to retailers.

***Product 3*.--** R-134a in bulk sold to end users for foam expansion, foam blowing, and aerosol applications.

**R-134a in 30-pound containers.**

***Product 4*. --**R-134a in 30-pound containers sold to distributors.

***Product 5*. --**R-134a in 30-pound containers sold to retailers.

**R-134a in 30-pound containers.**

***Product 6*. --**R-134a in 12-ounce containers sold to distributors.

***Product 7*. --**R-134a in 12-ounce containers sold to retailers.

During January 2011-June 2014, did your firm import from China and sell to unrelated U.S. customers (other than direct retail sales) any of the above listed products (or any products that were competitive with these products)?

| | |
|---|---|
| ☐ | **Yes**.--Please complete III-2 and then skip to question III-3. |
| ☐ | **No.**—Answer the question below. |

**PART III.--PRICING AND RELATED INFORMATION--*Continued***

III-2. **Price data**.--Report below the quarterly price data[1] for pricing products[2] imported from China and sold by your firm. Do not include any direct retail sales to consumers.

# China

**Report data in actual POUNDS and actual dollars (not 1,000s).**

| Period of shipment | Product 1 R-134a in bulk sold to distributors | | Product 2 R-134a in bulk sold to retailers | | Product 3 R-134a in bulk sold to foam/aerosol end users | |
|---|---|---|---|---|---|---|
| | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) |
| **2011:** January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2012:** January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2013:** January-March | | | | | | |
| April-June | | | | | | |
| July-September | | | | | | |
| October-December | | | | | | |
| **2013:** January-March | | | | | | |
| April-June | | | | | | |

[1] Net sales values (*i.e.*, gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods), f.o.b. your firm's U.S. point of shipment.
[2] Pricing product definitions are provided on the first page of Part III.

**Note.--**If your firm's product does not exactly meet the product specifications but is competitive with the specified product, provide a description of your firm's product. Also, please explain any anomalies in your firm's reported pricing data.

Product 1:

Product 2:

Product 3:

**Please note that values should be f.o.b., U.S. point of shipment and should not include U.S.-inland transportation costs. Values should reflect the *final net* amount paid to your firm (i.e., should be net of all deductions for discounts or rebates).**

*Business Proprietary*

**PART III.--PRICING AND RELATED INFORMATION--*Continued***

III-2. **Price data**.--Report below the quarterly price data[1] for pricing products[2] imported from China and sold by your firm. Do not include any direct retail sales to consumers.

# China

**Report data in actual POUNDS and actual dollars (not 1,000s).**

| Period of shipment | Product 4 R-134a in 30-pound containers sold to distributors | | Product 5 R-134a in 30-pound containers sold to retailers | | Product 6 R-134a in 12-ounce containers sold to distributors | | Product 7 R-134a in 12-ounce containers sold to retailers | |
|---|---|---|---|---|---|---|---|---|
| | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) | Quantity (pounds) | Value (dollars) |
| **2011:** January-March | | | | | | | | |
| April-June | | | | | | | | |
| July-September | | | | | | | | |
| October-December | | | | | | | | |
| **2012:** January-March | | | | | | | | |
| April-June | | | | | | | | |
| July-September | | | | | | | | |
| October-December | | | | | | | | |
| **2013:** January-March | | | | | | | | |
| April-June | | | | | | | | |
| July-September | | | | | | | | |
| October-December | | | | | | | | |
| **2013:** January-March | | | | | | | | |
| April-June | | | | | | | | |

[1] Net sales values (*i.e.*, gross sales values less all discounts, allowances, rebates, prepaid freight, and the value of returned goods), f.o.b. your firm's U.S. point of shipment.

[2] Pricing product definitions are provided on the first page of Part III.

**Note.--**If your firm's product does not exactly meet the product specifications but is competitive with the specified product, provide a description of your firm's product. Also, please explain any anomalies in your firm's reported pricing data.

Product 4:

Product 5:

Product 6:

Product 7:

**Please note that values should be f.o.b., U.S. point of shipment and should not include U.S.-inland transportation costs. Values should reflect the *final net* amount paid to your firm (i.e., should be net of all deductions for discounts or rebates).**

# 1-150

# Dougan Hearing Exhibits (selected pages)

Office of the Secretary

UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**PUBLIC**
**HEARING MATERIALS**

October 16, 2014

**MEMORANDUM**

**TO:** Docket Services
Office of Administrative Services
Office of the Secretary

**FROM:** William R. Bishop
Supervisory Hearings and Information Officer

**SUBJECT:** **PUBLIC** Hearing Materials of October 15, 2014

**RE:** Inv. Nos. 701-TA-509 and 731-TA-1244 (Final)(1,1,1,2-Tetrafluoroethane ("R-134a") from China)

Attached please find the following **PUBLIC** hearing materials for the above referenced hearing:

1.) Memorandum of Record

2.) Final Calendar of Witnesses

3.) Presentation of Petitioner Mexichem Fluor Inc.

4.) Hearing exhibits to testimony of Jim Dougan, Economic Consulting Services, LLC

William R. Bishop
Supervisory Hearings and Information Officer

 ECS
ECONOMIC CONSULTING SERVICES, LLC

BEFORE THE
UNITED STATES INTERNATIONAL TRADE COMMISSION

IN THE MATTER
OF
TETRAFLUOROETHANE FROM CHINA

Inv. No(s). 701-TA-509 and 731-TA-1244 (Final)

EXHIBITS TO TESTIMONY OF
JIM DOUGAN
VICE PRESIDENT
ECONOMIC CONSULTING SERVICES, LLC

OCTOBER 15, 2014
Washington, D.C.

# Domestic Industry Price Declines Followed Equally Severe Price Increases

140
120
100
80
60
40
20
0
Index: Q1 2011=100
124
114
110
103
100
100
102
99
80
79
80
84
80
72
72
76
73
63
57
59
62
56
54
53
55
57
56
56
Final USA AUV Index
Prelim USA AUV Index
Q1 2010 – Q2 2011: +127%
Q1 2011 – Q2 2013: - 41%
(Using Final Data)
Q1 2011 – Q2 2013: -44%
(Using Prelim Data)
Q1 2010
Q2 2010
Q3 2010
Q4 2010
Q1 2011
Q2 2011
Q3 2011
Q4 2011
Q1 2012
Q2 2012
Q3 2012
Q4 2012
Q1 2013
Q2 2013
Q3 2013
Q4 2013
Q1 2014
Q2 2014

Source: Preliminary Staff Report at Tables V-3 to V-5; Prehearing Report at Tables V-3 to V-13 (modified as noted in Respondents' Prehearing Brief Exhibit 8)

1

# 1-191

# Notice of Determinations
# 79 Fed. Reg. 73102 (Dec. 9, 2014)

products and related marketing materials by reason of infringement of certain claims of U.S. Patent No. RE38,096 ("the '096 patent"); U.S. Patent No. 6,978,775 ("the '775 patent"); U.S. Trademark Registration No. 2,501,255 ("the '255 mark"); and U.S. Trademark Registration No. 3,312,392 ("the '392 mark"). *Id.* The complaint further alleges the existence of a domestic industry. *Id.* The Commission's notice of investigation named Ningbo Topoint as the only respondent, and indicated that the Office of Unfair Import Investigations is participating in this investigation. *Id.*

On September 2, 2014, the ALJ ordered Ningbo Topoint to show cause why it should not be found in default. *See* Order No. 10. No response to Order No. 10 was filed. On September 16, 2014, the ALJ issued an initial determination finding Ningbo Topoint in default under Commission Rule 210.16(a)(1) (19 CFR 210.16(a)(1)). *See* Order No. 11. On October 16, 2014, the Commission determined not to review the initial determination.

The Commission requested briefing from the parties and the public on the issues of remedy, the public interest, and bonding. The Commission received responsive submissions from Complainants and the Commission Investigative Attorney ("IA") on October 30, 2014, and a reply submission from the IA on November 6, 2014. The submissions agreed that the appropriate remedy is the entry of a limited exclusion order against Ningbo Topoint, that the public interest factors do not weigh against granting such a limited exclusion order, and that bonding should be set at 100 percent of the entered value of the infringing products.

The Commission finds that the statutory requirements of section 337(g)(1) (19 U.S.C. 1337(g)(1)) and Commission Rule 210.16(a)(1) (19 CFR 210.16(a)(1)) are met with respect to Ningbo Topoint. Accordingly, pursuant to section 337(g)(1) (19 U.S.C. 1337(g)(1)) and Commission Rule 210.16(c) (19 CFR 210.16(c)), the Commission presumes the facts alleged in the complaint to be true and finds that Ningbo Topoint is in violation of section 337.

The Commission has determined that the appropriate form of relief in this investigation is a limited exclusion order prohibiting the unlicensed entry of archery products and related marketing materials that are manufactured abroad by or on behalf of, or imported by or on behalf of, Ningbo Topoint that infringe one or more of claims 1–3, 6–12, and 15–38 of the '096 patent and claims 1–3, 16–22, 24–26, 29, 31, and 32 of the '775 patent, or infringe the '255 or '392 marks. The Commission has further determined that the public interest factors enumerated in section 337(g)(1) (19 U.S.C. 1337(g)(1)) do not preclude the issuance of the limited exclusion order. Finally, the Commission has determined that the bond for importation during the period of Presidential review shall be in the amount of 100 percent of the entered value of the imported subject articles of Ningbo Topoint. The Commission's order was delivered to the President and the United States Trade Representative on the day of its issuance.

The authority for the Commission's determination is contained in section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337), and in Part 210 of the Commission's Rules of Practice and Procedure (19 CFR part 210).

By order of the Commission.

Dated: December 3, 2014.

**Lisa R. Barton,**

*Secretary to the Commission.*

[FR Doc. 2014–28765 Filed 12–8–14; 8:45 am]

**BILLING CODE 7020–02–P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 701–TA–509 and 731–TA–1244 (Final)]**

### 1,1,1,2-Tetrafluoroethane From China

**Determinations**

On the basis of the record[1] developed in the subject investigations, the United States International Trade Commission ("Commission") determines, pursuant to sections 705(b) and 735(b) of the Tariff Act of 1930 (19 U.S.C. 1671d(b)) and (19 U.S.C. 1673d(b)) ("the Act"), that an industry in the United States is not materially injured or threatened with material injury, and the establishment of an industry in the United States is not materially retarded, by reason of imports of 1,1,1,2-Tetrafluoroethane from China, provided for in subheading 2903.39.20 of the Harmonized Tariff Schedule of the United States, that have been found by the Department of Commerce ("Commerce") to be sold in the United States at less than fair value ("LTFV") and subsidized by the government of China.[2]

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

[2] Commissioners Irving A. Williamson and Rhonda K. Schmidtlein dissenting.

**Background**

The Commission instituted these investigations effective October 22, 2013, following receipt of a petition filed with the Commission and Commerce by Mexichem Fluor Inc., St. Gabriel, LA. The final phase of the investigations was scheduled by the Commission following notification of preliminary determinations by Commerce that imports of 1,1,1,2-Tetrafluoroethane from China were subsidized within the meaning of section 703(b) of the Act (19 U.S.C. 1671b(b)) and sold at LTFV within the meaning of 733(b) of the Act (19 U.S.C. 1673b(b)). Notice of the scheduling of the final phase of the Commission's investigations and of a public hearing to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** on June 24, 2014 (79 FR 35795). The hearing was held in Washington, DC on October 15, 2014, and all persons who requested the opportunity were permitted to appear in person or by counsel.

The Commission transmitted its determinations in these investigations to the Secretary of Commerce on December 3, 2014. The views of the Commission are contained in USITC Publication 4503 (December 2014), entitled *1,1,1,2-Tetrafluoroethane from China: Investigation Nos. 701–TA–509 and 731–TA–1244 (Final).*

By order of the Commission.

Issued: December 4, 2014.

**Lisa R. Barton,**

*Secretary to the Commission.*

[FR Doc. 2014–28790 Filed 12–8–14; 8:45 am]

**BILLING CODE 7020–02–P**

---

## DEPARTMENT OF JUSTICE

**[OMB Number 1110–0045]**

### Agency Information Collection Activities; Proposed eCollection eComments Requested; Extension With Change, of a Previously Approved Collection FD–1000 Customer Satisfaction Assessment

**AGENCY:** Bureau of Investigation, Department of Justice.

**ACTION:** 60-Day notice.

**SUMMARY:** The Department of Justice (DOJ), FBI Laboratory, Federal Bureau of Investigation, will be submitting the following information collection request to the Office of Management and Budget (OMB) for review and approval in

# 1-198

# Views of the Commission, USITC Pub. 4503

# U.S. International Trade Commission

Washington, DC 20436
*www.usitc.gov*

# 1,1,1,2—TETRAFLUOROETHANE FROM CHINA

Investigation Nos. 701-TA-509 and 731-TA-1244 (Final)



**Publication 4503**                                          **December 2014**

# Views of the Commission

Based on the record in the final phase of these investigations, we find that an industry in the United States is not materially injured or threatened with material injury by reason of imports of 1,1,1,2 – Tetrafluoroethane ("R-134a") from China, found by the U.S. Department of Commerce ("Commerce") to be sold in the United States at less than fair value and to be subsidized by the government of China.[1] [2]

## 1. Background

The petition in these investigations was filed on October 22, 2013 by Mexichem Fluor, Inc. ("Mexichem"), a U.S. producer of R-134a. Mexichem appeared at the hearing and submitted prehearing and posthearing briefs. E.I. DuPont de Nemours & Co. ("DuPont"), a U.S. producer of R-134a that supports the imposition of duties, also appeared at the hearing and submitted prehearing and posthearing briefs.

Sinochem Environmental Protection Chemicals (Taican) Co. ("Sinochem"), Zhejiang Quhau Fluor-Chemistry Co. ("Quhau"), Zhejiang Sanmei Chemical Industry Co. ("Sanmei"), and Weitron International Refrigeration Equipment (Kunshan) Co. ("Weitron") (collectively "Respondents") appeared at the hearing and jointly submitted prehearing and posthearing briefs opposing the imposition of duties. Sinochem, Quhau, and Sanmei are Chinese producers of the subject merchandise; Weitron imports the subject merchandise. AutoZone, Inc., a U.S. purchaser and importer of R-134a, appeared at the hearing in opposition to the imposition of duties and submitted a posthearing brief answering Commissioners' questions. National Refrigerants, Inc. ("National Refrigerants"), a U.S. importer of R-134a, appeared at the hearing and filed prehearing and posthearing briefs opposing an affirmative critical circumstances determination.

U.S. industry data are based on the questionnaire responses from three domestic producers, Mexichem, DuPont, and Arkema, Inc. ("Arkema"), that accounted for 100 percent of domestic production of R-134a during the period of investigation ("POI"), which encompasses January 2011 through June 2014.[3] U.S. import data are based on official Customs import statistics and on the questionnaire responses of 40 U.S. importers of subject merchandise.[4]

---

[1] Material retardation is not an issue in these investigations.

[2] Commissioners Williamson and Schmidtlein determine that an industry in the United States is materially injured by reason of imports of R-134a from China that Commerce found to be sold in the United States at less than fair value and subsidized by the government of China. See their dissenting views. They join sections I-V of this opinion.

[3] Confidential Report ("CR") at III-1, Public Report ("PR") at III-1.

[4] CR/PR at IV-1. Because of the likelihood that official Customs import statistics understate the true volume of R-134a imports during the POI due to misclassified entries, staff requested that importers report all R-134a that entered the United States under HTS numbers other than 2903.39.2020. These data were combined with official Customs import statistics to arrive at the (Continued...)

Data on the subject industry are based on questionnaire responses from five foreign producers that accounted for approximately 96.5 percent of overall production of subject merchandise in China and 83.0 percent of all exports of R-134a to the United States in 2013.[5]

**2. Domestic Like Product**

**A. In General**

In determining whether an industry in the United States is materially injured or threatened with material injury by reason of imports of subject merchandise, the Commission first defines the "domestic like product" and the "industry."[6] Section 771(4)(A) of the Tariff Act of 1930, as amended ("the Tariff Act"), defines the relevant domestic industry as the "producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product."[7] In turn, the Tariff Act defines "domestic like product" as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation."[8]

The decision regarding the appropriate domestic like product in an investigation is a factual determination, and the Commission has applied the statutory standard of "like" or "most similar in characteristics and uses" on a case-by-case basis.[9] No single factor is dispositive, and the Commission may consider other factors it deems relevant based on the facts of a particular investigation.[10] The Commission looks for clear dividing lines among

---

(…Continued)
estimated total imports of R-134a during the POI. CR/PR at IV-1 n.4 . Importer questionnaire responses account for *** percent of subject imports from China in 2013 reported in adjusted official import statistics. This discrepancy is likely due to (1) estimation of some of the data in questionnaire responses, due to inadequate records and (2) underreporting by importers of the volume of R-134a imported under an HTS number other than 2903.39.2020. *Id.* at n.3

[5] CR at VII-3, PR at 2-3.

[6] 19 U.S.C. § 1677(4)(A).

[7] 19 U.S.C. § 1677(4)(A).

[8] 19 U.S.C. § 1677(10).

[9] *See, e.g., Cleo Inc. v. United States*, 501 F.3d 1291, 1299 (Fed. Cir. 2007); *NEC Corp. v. Department of Commerce*, 36 F. Supp. 2d 380, 383 (Ct. Int'l Trade 1998); *Nippon Steel Corp. v. United States*, 19 CIT 450, 455 (1995); *Torrington Co. v. United States*, 747 F. Supp. 744, 749 n.3 (Ct. Int'l Trade 1990), aff'd, 938 F.2d 1278 (Fed. Cir. 1991) ("every like product determination 'must be made on the particular record at issue' and the 'unique facts of each case'"). The Commission generally considers a number of factors, including the following: (1) physical characteristics and uses; (2) interchangeability; (3) channels of distribution; (4) customer and producer perceptions of the products; (5) common manufacturing facilities, production processes, and production employees; and, where appropriate, (6) price. *See Nippon*, 19 CIT at 455 n.4; *Timken Co. v. United States*, 913 F. Supp. 580, 584 (Ct. Int'l Trade 1996).

[10] *See*, *e.g.*, S. Rep. No. 96-249 at 90-91 (1979).

possible like products and disregards minor variations.[11] Although the Commission must accept Commerce's determination as to the scope of the imported merchandise that is subsidized or sold at less than fair value,[12] the Commission determines what domestic product is like the imported articles Commerce has identified.[13]

**B. Product Description**

Commerce defined the scope of the imported merchandise under investigation as follows:

> 1,1,1,2-Tetrafluoroethane, R-134a, or its chemical equivalent, regardless of form, type, or purity level. The chemical formula for 1,1,1,2-tetrafluoroethane is $CF_3$-$CH_2F$, and the Chemical Abstracts Service registry number is CAS 811-97-2.
>
> 1,1,1,2-Tetrafluoroethane is sold under a number of trade names including Klea 134a and Zephex 134a (Mexichem Fluor); Genetron 134a (Honeywell); Suva 134a, Dymel 134a, and Dymel P134a (DuPont); Solkane 134a (Solvay); and Forane 134a (Arkema). Generically, 1,1,1,2-tetrafluoroethane has been sold as Fluorocarbon 134a, R-134a, HFC-134a, HF A-134a, Refrigerant 134a, and UN3159.
>
> Merchandise covered by the scope of these investigations is currently classified in the Harmonized Tariff Schedule of the United States at subheading 2903.39.2020.[14]

R-134a is used predominantly as a refrigerant in air conditioning systems. It is a clear, colorless liquid or gas that is relatively nontoxic and nonflammable.[15] R-134a is the primary

---

[11] *Nippon*, 19 CIT at 455; *Torrington*, 747 F. Supp. at 748-49; *see also* S. Rep. No. 96-249 at 90-91 (Congress has indicated that the like product standard should not be interpreted in "such a narrow fashion as to permit minor differences in physical characteristics or uses to lead to the conclusion that the product and article are not 'like' each other, nor should the definition of 'like product' be interpreted in such a fashion as to prevent consideration of an industry adversely affected by the imports under consideration.").

[12] *See*, *e.g., USEC, Inc. v. United States*, 34 Fed. Appx. 725, 730 (Fed. Cir. 2002) ("The ITC may not modify the class or kind of imported merchandise examined by Commerce."); *Algoma Steel Corp. v. United States*, 688 F. Supp. 639, 644 (Ct. Int'l Trade 1988), *aff'd*, 865 F.3d 240 (Fed. Cir.), *cert. denied*, 492 U.S. 919 (1989).

[13] *Hosiden Corp. v. Advanced Display Mfrs*., 85 F.3d 1561, 1568 (Fed. Cir. 1996) (the Commission may find a single like product corresponding to several different classes or kinds defined by Commerce); *Cleo*, 501 F.3d at 1298 n.1 ("Commerce's {scope} finding does not control the Commission's {like product} determination."); *Torrington*, 747 F. Supp. at 748-52 (affirming the Commission's determination defining six like products in investigations in which Commerce found five classes or kinds).

[14] *1,1,1,2 – Tetrafluoroethane from the People's Republic of China*, 79 Fed. Reg. 62597 (final determination of sales at less than fair value) ("Commerce Final AD Determination") (Oct. 20, 2014).

[15] CR at I-10, PR at I-7.

refrigerant used in automotive air conditioning systems and is also used in domestic and commercial refrigeration, as a propellant in aerosol cans, in foam-blowing of building insulation, and in pharmaceutical uses such as asthma inhalers.[16] R-134a is produced by a number of methods which generally involve reacting hydrogen fluoride with a compound containing carbon and chlorine.[17]

**C. Domestic Like Product Analysis**

In the preliminary phase of these investigations, the Commission found that R-134a was used primarily as a refrigerant in air conditioning systems, and that, notwithstanding differences between producers in achieving the chemical reaction necessary to producing R-134a, they used similar general processes to produce R-134a.[18] The Commission also found that domestically produced R-134a was sold to both distributors and end users and was interchangeable with other refrigerants only in some circumstances.[19] Based on these findings and the lack of any contrary argument from any of the parties, the Commission identified a single domestic like product that is coextensive with the scope of Commerce's investigations.

In the final phase of these investigations, the record does not contain any new information concerning the domestic like product factors,[20] and no party has argued that the Commission should adopt a definition of the domestic like product that is different from the preliminary phase determinations.[21] Therefore, for the reasons set forth in the preliminary phase of these investigations, we define a single domestic like product that is coextensive with the scope of Commerce's investigations.

**3. Domestic Industry**

The domestic industry is defined as the domestic "producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product."[22] In defining the domestic industry, the Commission's general practice has been to include in the industry producers of all domestic production of the like product, whether toll-produced, captively consumed, or sold in the domestic merchant market.

We must determine whether any producer of the domestic like product should be excluded from the domestic industry pursuant to section 771(4)(B) of the Tariff Act. This provision allows the Commission, if appropriate circumstances exist, to exclude from the

[16] CR at I-19-22, PR at I-13-15.

[17] CR at I-11, PR at I-8.

[18] *1,1,1,2 – Tetrafluoroethane from China*, Inv. Nos. 701-TA-509 and 731-TA-1244 (Preliminary) ("Preliminary Opinion"), USITC Pub. 4444 at 6-7 (Jan. 2014).

[19] Preliminary Opinion, USITC Pub. 4444 at 7.

[20] *See generally* CR at I-10-25, PR at I-7-16.

[21] *See generally* Petitioner's Prehearing Brief; Respondents' Prehearing Brief at 4.

[22] 19 U.S.C. § 1677(4)(A).

domestic industry producers that are related to an exporter or importer of subject merchandise or which are themselves importers.[23] Exclusion of such a producer is within the Commission's discretion based upon the facts presented in each investigation.[24]

Domestic producer *** imported subject merchandise from China in ***.[25] Accordingly, *** is a related party.[26]

*** ratio of imports from China to U.S. production was ***.[27] The record does not indicate that this producer has benefitted from the small amount of subject imports that it imported over the POI.[28] Indeed, ***.[29 30] ***.[31] Because *** principal interest remains in domestic production and because the record does not suggest that it benefitted from the subject merchandise that it imported, we find that appropriate circumstances do not exist to warrant excluding it as a related party. Accordingly, we define the domestic industry as consisting of all domestic producers of R-134a.

### 4. Legal Standards

In the final phase of antidumping and countervailing duty investigations, the Commission determines whether an industry in the United States is materially injured or threatened with material injury by reason of the imports under investigation.[32] In making this determination, the Commission must consider the volume of subject imports, their effect on

---

[23] *See Torrington Co. v. United States*, 790 F. Supp. 1161, 1168 (Ct. Int'l Trade 1992), *aff'd without opinion*, 991 F.2d 809 (Fed. Cir. 1993); *Sandvik AB v. United States*, 721 F. Supp. 1322, 1331-32 (Ct. Int'l Trade 1989), *aff'd mem.*, 904 F.2d 46 (Fed. Cir. 1990); *Empire Plow Co. v. United States*, 675 F. Supp. 1348, 1352 (Ct. Int'l Trade 1987).

[24] The primary factors the Commission has examined in deciding whether appropriate circumstances exist to exclude a related party include the following:

(1) the percentage of domestic production attributable to the importing producer;

(2) the reason the U.S. producer has decided to import the product subject to investigation, *i.e.*, whether the firm benefits from the LTFV sales or subsidies or whether the firm must import in order to enable it to continue production and compete in the U.S. market; and

(3) the position of the related producer vis-a-vis the rest of the industry, *i.e.*, whether inclusion or exclusion of the related party will skew the data for the rest of the industry. *See*, *e.g.*, *Torrington Co. v United States*, 790 F. Supp. at 1168.

[25] CR/PR at Table III-10.

[26] The parties have not raised any arguments regarding the definition of the domestic industry.

[27] CR/PR at Table III-10.

[28] CR/PR at Table VI-2.

[29] CR/PR at Table VI-2.

[30] Vice Chairman Pinkert has not relied upon existing parties' financial performance on their U.S. manufacturing operations as a factor in determining whether there are appropriate circumstances to exclude them from the domestic industry and has instead relied on the other information set forth in the text.

[31] CR/PR at Table III-1.

[32] 19 U.S.C. §§ 1671d(b), 1673d(b).

prices for the domestic like product, and their impact on domestic producers of the domestic like product, but only in the context of U.S. production operations.[33] The statute defines "material injury" as "harm which is not inconsequential, immaterial, or unimportant."[34] In assessing whether the domestic industry is materially injured by reason of subject imports, we consider all relevant economic factors that bear on the state of the industry in the United States.[35] No single factor is dispositive, and all relevant factors are considered "within the context of the business cycle and conditions of competition that are distinctive to the affected industry."[36]

Although the statute requires the Commission to determine whether the domestic industry is "materially injured or threatened with material injury by reason of" unfairly traded imports,[37] it does not define the phrase "by reason of," indicating that this aspect of the injury analysis is left to the Commission's reasonable exercise of its discretion.[38] In identifying a causal link, if any, between subject imports and material injury to the domestic industry, the Commission examines the facts of record that relate to the significance of the volume and price effects of the subject imports and any impact of those imports on the condition of the domestic industry. This evaluation under the "by reason of" standard must ensure that subject imports are more than a minimal or tangential cause of injury and that there is a sufficient causal, not merely a temporal, nexus between subject imports and material injury.[39]

In many investigations, there are other economic factors at work, some or all of which may also be having adverse effects on the domestic industry. Such economic factors might include nonsubject imports; changes in technology, demand, or consumer tastes; competition among domestic producers; or management decisions by domestic producers. The legislative history explains that the Commission must examine factors other than subject imports to

---

[33] 19 U.S.C. § 1677(7)(B). The Commission "may consider such other economic factors as are relevant to the determination" but shall "identify each {such} factor ... and explain in full its relevance to the determination." 19 U.S.C. § 1677(7)(B).

[34] 19 U.S.C. § 1677(7)(A).

[35] 19 U.S.C. § 1677(7)(C)(iii).

[36] 19 U.S.C. § 1677(7)(C)(iii).

[37] 19 U.S.C. §§ 1671d(a), 1673d(a).

[38] *Angus Chemical Co. v. United States*, 140 F.3d 1478, 1484-85 (Fed. Cir. 1998) ("{T}he statute does not 'compel the commissioners' to employ {a particular methodology}."), *aff'g,* 944 F. Supp. 943, 951 (Ct. Int'l Trade 1996).

[39] The Federal Circuit, in addressing the causation standard of the statute, observed that "{a}s long as its effects are not merely incidental, tangential, or trivial, the foreign product sold at less than fair value meets the causation requirement." *Nippon Steel Corp. v. USITC*, 345 F.3d 1379, 1384 (Fed. Cir. 2003). This was further ratified in *Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867, 873 (Fed. Cir. 2008), where the Federal Circuit, quoting *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 722 (Fed. Cir. 1997), stated that "this court requires evidence in the record 'to show that the harm occurred "by reason of" the LTFV imports, not by reason of a minimal or tangential contribution to material harm caused by LTFV goods.'" *See also Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1357 (Fed. Cir. 2006); *Taiwan Semiconductor Industry Ass'n v. USITC*, 266 F.3d 1339, 1345 (Fed. Cir. 2001).

ensure that it is not attributing injury from other factors to the subject imports, thereby inflating an otherwise tangential cause of injury into one that satisfies the statutory material injury threshold.[40] In performing its examination, however, the Commission need not isolate the injury caused by other factors from injury caused by unfairly traded imports.[41] Nor does the "by reason of" standard require that unfairly traded imports be the "principal" cause of injury or contemplate that injury from unfairly traded imports be weighed against other factors, such as nonsubject imports, which may be contributing to overall injury to an industry.[42] It is clear that the existence of injury caused by other factors does not compel a negative determination.[43]

Assessment of whether material injury to the domestic industry is "by reason of" subject imports "does not require the Commission to address the causation issue in any particular way" as long as "the injury to the domestic industry can reasonably be attributed to the subject imports" and the Commission "ensure{s} that it is not attributing injury from other sources to

---

[40] SAA at 851-52 ("{T}he Commission must examine other factors to ensure that it is not attributing injury from other sources to the subject imports."); S. Rep. 96-249 at 75 (1979) (the Commission "will consider information which indicates that harm is caused by factors other than less-than-fair-value imports."); H.R. Rep. 96-317 at 47 (1979) ("in examining the overall injury being experienced by a domestic industry, the ITC will take into account evidence presented to it which demonstrates that the harm attributed by the petitioner to the subsidized or dumped imports is attributable to such other factors;" those factors include "the volume and prices of nonsubsidized imports or imports sold at fair value, contraction in demand or changes in patterns of consumption, trade restrictive practices of and competition between the foreign and domestic producers, developments in technology and the export performance and productivity of the domestic industry"); *accord Mittal Steel*, 542 F.3d at 877.

[41] SAA at 851-52 ("{T}he Commission need not isolate the injury caused by other factors from injury caused by unfair imports."); *Taiwan Semiconductor Industry Ass'n,* 266 F.3d at 1345 ("{T}he Commission need not isolate the injury caused by other factors from injury caused by unfair imports ... . Rather, the Commission must examine other factors to ensure that it is not attributing injury from other sources to the subject imports." (emphasis in original)); *Asociacion de Productores de Salmon y Trucha de Chile AG v. United States*, 180 F. Supp. 2d 1360, 1375 (Ct. Int'l Trade 2002) ("{t}he Commission is not required to isolate the effects of subject imports from other factors contributing to injury" or make "bright-line distinctions" between the effects of subject imports and other causes.); *see also Softwood Lumber from Canada*, Inv. Nos. 701-TA-414 and 731-TA-928 (Remand), USITC Pub. 3658 at 100-01 (Dec. 2003) (Commission recognized that "{i}f an alleged other factor is found not to have or threaten to have injurious effects to the domestic industry, *i.e.*, it is not an 'other causal factor,' then there is nothing to further examine regarding attribution to injury"), *citing Gerald Metals,* 132 F.3d at 722 (the statute "does not suggest that an importer of LTFV goods can escape countervailing duties by finding some tangential or minor cause unrelated to the LTFV goods that contributed to the harmful effects on domestic market prices.").

[42] S. Rep. 96-249 at 74-75; H.R. Rep. 96-317 at 47.

[43] *See Nippon Steel Corp*., 345 F.3d at 1381 ("an affirmative material-injury determination under the statute requires no more than a substantial-factor showing. That is, the 'dumping' need not be the sole or principal cause of injury.").

the subject imports."[44] [45]   Indeed, the Federal Circuit has examined and affirmed various Commission methodologies and has disavowed "rigid adherence to a specific formula."[46]

The Federal Circuit's decisions in *Gerald Metals, Bratsk*, and *Mittal Steel* all involved cases where the relevant "other factor" was the presence in the market of significant volumes of price-competitive nonsubject imports.  The Commission interpreted the Federal Circuit's guidance in *Bratsk* as requiring it to apply a particular additional methodology following its finding of material injury in cases involving commodity products and a significant market presence of price-competitive nonsubject imports.[47]  The additional "replacement/benefit" test looked at whether nonsubject imports might have replaced subject imports without any benefit to the U.S. industry.  The Commission applied that specific additional test in subsequent cases, including the *Carbon and Certain Alloy Steel Wire Rod from Trinidad and Tobago* determination that underlies the *Mittal Steel* litigation.

*Mittal Steel* clarifies that the Commission's interpretation of *Bratsk* was too rigid and makes clear that the Federal Circuit does not require the Commission to apply an additional test nor any one specific methodology; instead, the court requires the Commission to have "evidence in the record" to "show that the harm occurred 'by reason of' the LTFV imports," and requires that the Commission not attribute injury from nonsubject imports or other factors to

---

[44] *Mittal Steel*, 542 F.3d at 877-78; *see also id.* at 873 ("While the Commission may not enter an affirmative determination unless it finds that a domestic industry is materially injured 'by reason of' subject imports, the Commission is not required to follow a single methodology for making that determination ... {and has} broad discretion with respect to its choice of methodology.") *citing United States Steel Group v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996) and S. Rep. 96-249 at 75.

[45] Vice Chairman Pinkert does not join this paragraph or the following three paragraphs.  He points out that the Federal Circuit, in *Bratsk*, 444 F.3d 1369, and *Mittal Steel*, held that the Commission is *required*, in certain circumstances when considering present material injury, to undertake a particular kind of analysis of non-subject imports, albeit without reliance upon presumptions or rigid formulas. *Mittal Steel* explains as follows:

> What *Bratsk* held is that "where commodity products are at issue and fairly traded, price competitive, non-subject imports are in the market," the Commission would not fulfill its obligation to consider an important aspect of the problem if it failed to consider whether non-subject or non-LTFV imports would have replaced LTFV subject imports during the period of investigation without a continuing benefit to the domestic industry.  444 F.3d at 1369.  Under those circumstances, *Bratsk* requires the Commission to consider whether replacement of the LTFV subject imports might have occurred during the period of investigation, and it requires the Commission to provide an explanation of its conclusion with respect to that factor.

542 F.3d at 878.

[46] *Nucor Corp. v. United States*, 414 F.3d 1331, 1336, 1341 (Fed. Cir. 2005); *see also Mittal Steel*, 542 F.3d at 879 ("*Bratsk* did not read into the antidumping statute a Procrustean formula for determining whether a domestic injury was 'by reason' of subject imports.").

[47] *Mittal Steel*, 542 F.3d at 875-79.

subject imports.[48] Accordingly, we do not consider ourselves required to apply the replacement/benefit test that was included in Commission opinions subsequent to *Bratsk*.

The progression of *Gerald Metals, Bratsk*, and *Mittal Steel* clarifies that, in cases involving commodity products where price-competitive nonsubject imports are a significant factor in the U.S. market, the Court will require the Commission to give full consideration, with adequate explanation, to non-attribution issues when it performs its causation analysis.[49]

The question of whether the material injury threshold for subject imports is satisfied notwithstanding any injury from other factors is factual, subject to review under the substantial evidence standard.[50] Congress has delegated this factual finding to the Commission because of the agency's institutional expertise in resolving injury issues.[51]

### 5. Conditions of Competition and the Business Cycle[52]

The following conditions of competition inform our analysis of whether there is material injury by reason of subject imports.

---

[48] *Mittal Steel*, 542 F.3d at 873 (quoting from *Gerald Metals*, 132 F.3d at 722), 875-79 & n.2 (recognizing the Commission's alternative interpretation of *Bratsk* as a reminder to conduct a non-attribution analysis).

[49] To that end, after the Federal Circuit issued its decision in *Bratsk*, the Commission began to present published information or send out information requests in final phase investigations to producers in nonsubject countries that accounted for substantial shares of U.S. imports of subject merchandise (if, in fact, there were large nonsubject import suppliers). In order to provide a more complete record for the Commission's causation analysis, these requests typically seek information on capacity, production, and shipments of the product under investigation in the major source countries that export to the United States. The Commission plans to continue utilizing published or requested information in final phase investigations in which there are substantial levels of nonsubject imports.

[50] We provide in our respective discussions of volume, price effects, and impact a full analysis of other factors alleged to have caused any material injury experienced by the domestic industry.

[51] *Mittal Steel*, 542 F.3d at 873; *Nippon Steel Corp*., 458 F.3d at 1350, *citing U.S. Steel Group*, 96 F.3d at 1357; S. Rep. 96-249 at 75 ("The determination of the ITC with respect to causation is ... complex and difficult, and is a matter for the judgment of the ITC.").

[52] Pursuant to Section 771(24) of the Tariff Act, imports from a subject country of merchandise corresponding to a domestic like product that account for less than 3 percent of all such merchandise imported into the United States during the most recent 12 months for which data are available preceding the filing of the petition shall be deemed negligible. 19 U.S.C. §§ 1671b(a), 1673b(a), 1677(24)(A)(i), 1677(24)(B); *see also* 15 C.F.R. § 2013.1 (developing countries for purposes for 19 U.S.C. § 1677(36)). The available data, compiled from information submitted in response to Commission questionnaires, show that in the 12-month period preceding the filing of the petition, subject imports from China accounted for 92.2 percent of total imports of R-134a by volume. CR at IV-10, PR at IV-7. Because subject imports were above the applicable statutory negligibility thresholds, we find that imports from China are not negligible.

## A. Demand Conditions

Demand for R-134a derives from demand for its end uses, the largest of which is automotive air conditioning systems.[53] Approximately *** percent of sales of R-134a for use in automotive air conditioning systems are to the replacement market, with the remainder to original equipment manufacturers ("OEMs").[54] The automotive aftermarket is supplied primarily by the domestic producers and subject imports and operates primarily on a spot sale basis.[55] The OEM market is supplied exclusively by domestic producers and operates on yearly or multi-year contracts.[56]

Demand for R-134a that is used in the automotive air conditioning systems replacement market is seasonal and is highest during the spring and summer. As a result, R-134a producers tend to increase shipments during the first half of the year in order to build inventory levels in preparation for the warmer summer months.[57] The other main end uses for R-134a are in household and commercial refrigeration systems, as a propellant in aerosol cans, as a foam expansion agent, and in pharmaceutical applications such as asthma inhalers.[58]

Market participants reported mixed perceptions of U.S. demand for R-134a during the POI. Petitioners asserted at the hearing that demand for R-134a was "relatively static" from 2012 to 2014.[59] Respondents assert that overall demand for R-134a declined slightly over the POI, but that demand in the automotive OEM market experienced a significant increase.[60] Respondents further assert that demand in the automotive replacement market increased over the POI, but not as significantly as demand in the OEM market.[61] The majority of U.S. purchasers and importers reported that U.S. demand was unchanged or that it decreased.[62]

The White House recently issued a statement announcing plans to reduce and eventually replace R-134a as a refrigerant with environmentally friendly alternatives.[63] However, the parties agree these plans will not be implemented in the imminent future.[64]

---

[53] CR at I-18-19, PR at I-13.

[54] CR at II-12, PR at II-7.

[55] CR/PR at Table I-3; CR at VII-14, PR at VII-9. Nonsubject imports ***. *Id.*; Tr. at 28-29 (Geosits), 53-55 (Rubin), 164 (Dayton); *Compare* CR/PR at Table IV-8 with Tables III-6 and IV-7.

[56] Tr. at 28 (Geosits); CR/PR at Table I-3.

[57] *See, e.g,.* Respondents' Prehearing Brief at 6; Petitioner's Prehearing Brief at 18, 36; Tr. at 78-79 (Rubin), 116 (Lammers), 127 (Dayton).

[58] CR/PR at Table I-3.

[59] Tr. at 56-57 (Schagrin).

[60] Respondents' Prehearing Brief at 6.

[61] Respondents' Prehearing Brief at 6.

[62] CR/PR at Table II-3.

[63] CR at I-14 n.20, PR at I-10.

[64] Tr. at 97 (Geosits), 162 (Lammers).

Apparent U.S. consumption declined somewhat from 2011 to 2013. Apparent U.S. consumption declined from *** short tons in 2011 to *** short tons in 2012 and *** short tons in 2013.[65]

**B. Supply Conditions**

The domestic industry supplied the majority of R-134a to the U.S. market during the POI. Nonsubject imports had a minimal presence in the U.S. market throughout the POI.[66]

U.S. producers' U.S. shipments as a share of apparent consumption were *** percent in 2011, *** percent in 2012, and *** percent in 2013.[67] Domestically produced R-134a was sold for all applications over the POI.[68] Subject imports as a share of apparent U.S. consumption were *** percent in 2011, *** percent in 2012, and *** percent in 2013.[69] The overwhelming majority of subject imports were sold for use in the automotive refrigerant aftermarket, with some sold for use as other refrigerants.[70] R-134a for household and commercial refrigeration is supplied by the domestic producers, subject imports, and to some extent nonsubject imports.[71] Nonsubject imports' share of apparent U.S. consumption never exceeded *** percent during any calendar year or interim period.[72]

The parties agree that from mid-2010 through at least 2011, the U.S. market for R-134a experienced a supply shortage.[73] Producers and importers attributed this supply shortage to a number of conditions such as raw material shortages, production problems, the phasing out of R-22 as a refrigerant and subsequent increased demand for R-134a in non-automotive applications, increased demand for R-134a as the United States emerged from a recession, low inventories, and new applications for R-134a.[74] Respondents contend, and Petitioner does not dispute, that when supply was tight in 2010 and 2011, the domestic producers chose to fulfill their contractual obligations before selling R-134a to automotive aftermarket purchasers in the

---

[65] CR/PR at Table IV-6. Apparent U.S. consumption of R-134a was *** short tons in interim 2013 and *** short tons in interim 2014. *Id.*

[66] *Compare* CR/PR at Table IV-8 with Tables III-6 and IV-7.

[67] CR/PR at Table IV-6. U.S. producers' U.S. shipments as a share of apparent consumption were *** percent in interim 2013 and *** percent in interim 2014. *Id.*

[68] *See* CR/PR at Table III-6.

[69] CR/PR at Table IV-6. Subject imports as a share of apparent consumption were *** percent in interim 2013 and *** percent in interim 2014. *Id.*

[70] CR/PR at Table IV-7.

[71] CR/PR at Table I-3. Nonsubject imports ***. *Id.* Subject imports were not imported for use as foam expansion agents or pharmaceutical purposes at any point during the POI. Nonsubject imports ***. *Id.*

[72] CR/PR at Table IV-6.

[73] *See, e.g.* Respondents' Prehearing Brief at Ex. 2.

[74] Tr. at 13 (Shutzman); 58 (Geosits); 77 (Rubin). ***. CR/PR at Table III-4.

spot market.[75] Although domestic producers testified that the supply shortage essentially ceased at the end of 2011,[76] the record indicates that ***, and *** in early 2012.[77]

### C. Substitutability and Other Conditions

We find that there is a high degree of substitutability between subject imports and the domestic like product. All of the domestic producers and the great majority of importers and purchasers reported that U.S.-produced R-134a was always or frequently interchangeable with R-134a from China and other countries.[78] Majorities or pluralities of purchasers found the subject imports and the domestic like product comparable in 11 out of 14 non-price purchasing factors, including those pertaining to quality and availability.[79]

The factors most frequently cited by purchasers as affecting their purchasing decisions were price, quality, and availability.[80] Price was most frequently cited by purchasers as the most important factor, and 22 out of 35 purchasers reported that they always or usually purchase the lowest-priced R-134a that is offered.[81] Accordingly, we find price to be an important factor in purchasing decisions.

Refrigeration systems are designed for use with a specific refrigerant.[82] Using a different refrigerant than the one for which the system is designed typically results in reduced efficiency or failure.[83] Therefore, there are very few short term substitutes for R-134a, particularly when it is used as a refrigerant.[84]

---

[75] Tr. at 54 (Rubin).

[76] Tr. at 55 (Rubin and Geosits).

[77] Respondents' Prehearing Brief at Exh. 2. In a letter dated February 15, 2012, ***

[78] CR at II-26, PR at 16-17, CR/PR at Table II-9. *See also* Tr. at 9 (Greenwald).

[79] CR/PR at Table II-8. Majorities of purchasers found the domestic like product superior with respect to delivery terms, delivery times, and technical support/service.

[80] CR/PR at Table II-5.

[81] CR at II-19-20, PR at II-12.

[82] CR at I-18, PR at I-13.

[83] CR at I-18, PR at I-13.

[84] CR at II-15, PR at II-9-10; Respondents' Prehearing Brief at 6 ("There are no substitutes for R-134a.")

The principal raw materials used in the production of R-134a are hydrogen fluoride (which is made from fluorspar), and trichloroethylene.[85] Raw material costs for U.S. producers increased by *** percent from 2011 to 2012, then decreased by *** percent from 2012 to 2013.[86] Raw material costs increased (*** percent) between interim 2013 and interim 2014.[87] [88]

**6. No Material Injury By Reason of Subject Imports**

**A. Volume of Subject Imports**

Section 771(7)(C)(i) of the Tariff Act provides that the "Commission shall consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant."[89]

The volume of subject imports increased from *** short tons in 2011 to *** short tons in 2012 before decreasing slightly to *** short tons in 2013.[90] The increase in subject import volume that occurred between 2011 and 2012 is attributable to the effects of a domestic supply shortage that began in 2010 and persisted at least through the end of 2011.[91] Domestic producers responded to the supply shortage by fulfilling their contractual obligations first before offering R-134a on the spot market to purchasers for the automotive replacement aftermarket.[92] Purchasers for the automotive replacement aftermarket reported that throughout 2010 and 2011, domestic producers informed them that supply was tight, forcing them to turn to imports from China in order to ensure a stable supply of R-134a.[93] Petitioners

[85] CR/PR at V-1.

[86] CR/PR at Appendix D.

[87] CR/PR at Appendix D.

[88] Commissioners Williamson and Schmidtlein have reached affirmative determinations and do not join the remainder of this opinion. *See* their dissenting views.

[89] 19 U.S.C. § 1677(7)(C)(i).

[90] CR/PR at Table IV-2. Subject imports also decreased from *** short tons in interim 2013 to *** short tons in interim 2014. The pendency of these investigations affected the subject import volume in interim 2014 because parties anticipated orders would be imposed and therefore purchasers felt it would be "advantageous to keep production in the United States." Tr. at 190 (Dayton, Marshak). We therefore exercise our discretion to accord less weight to the interim 2014 data. See 19 U.S.C. §1677(7)(I).

[91] Tr. at 208 (Schagrin) ("at the time they entered the market, {subject imports} were not injurious and that's why no petitions were filed in 2010 or 2011."). *See also* Tr. at 134 (Dougan) (observing that the partial shutdown of one U.S. production plant was anticipated for 2012).

[92] Tr. at 54 (Rubin) ("There's a dynamic that exists there where you're going to fulfill your contractual obligations before you fulfill your spot obligations."). The record also shows that domestic producers did not reduce their export volumes despite supply tightness in the U.S. market. CR/PR at Table III-5.

[93] Respondents' Prehearing Brief at 10-11. The record contains correspondence from *** in April 2010 (***), and *** in January 2011 ("***"). *Id*. A DuPont representative acknowledged at the (Continued...)

agree that the supply shortage occurred through the end of 2011.[94] As late as February 2012, purchasers for the automotive aftermarket were informed by at least one domestic supplier (***."[95] ***.[96] Furthermore, purchasers were aware that *** had scheduled a plant shutdown in 2012 for maintenance, further decreasing the available supply of domestically produced R-134a in 2012.[97]

Because the duration of the supply shortage was uncertain at the time it was occurring and because purchasers wanted to ensure a stable supply of R-134a, they turned to China as a reliable source of R-134a, both during the shortage and as the shortage began to dissipate.[98] Purchasers testified at the hearing that they typically place orders in the fall and that these orders are delivered in the late fall and winter months.[99] Therefore, orders placed in the fall of 2011, when purchasers were still responding to the 2011 supply tightness and continued inability to obtain R-134a from domestic producers, would have been delivered through early 2012. Unsurprisingly, the bulk of subject import volume was sold in the automotive replacement aftermarket,[100] which was the market segment that domestic producers concede was left with the greatest shortages of R-134a.[101] We observe that as the market stabilized in 2012, the pace of subject imports slowed. Subject imports on both a relative and absolute basis dropped slightly in 2013.[102]

Subject imports as a share of the U.S. market increased from *** percent in 2011 to *** percent in 2012, and then declined to *** percent in 2013.[103] U.S. producers' U.S. shipments as

---

(…Continued)
preliminary phase conference that "during the period in question, 2010/2011 . . . if we were in a constrained supply situation, we fulfilled all of our contractual obligations, but those customers that buy from us on the spot market, if we were constrained, we would have communicated to them that, hey, we're constrained. You may want to find an alternative source." (Prelim. Tr. at 114). *See also* CR at V-28-29, PR at V-8 (***).

[94] *E.g.*, DuPont Prehearing Brief at 4. *See also* Tr. at 51 (Rubin) ("There's no question that the pricing dynamics in 2011 were driven predominantly by the tightness of supply in that period.").

[95] Respondents' Prehearing Brief at 13 (quoting ***). Respondents' Prehearing Brief at Exh. 2.

[96] Respondents' Prehearing Brief at Exh. 2.

[97] CR at III-4, PR at III-2. Tr. at 134-35 (Dougan).

[98] Tr. at 121 (Lammers), 156-57 (Dougan)

[99] Tr. at 127 (Dayton).

[100] CR/PR at Table IV-7.

[101] *E.g.* Tr. at 54 (Rubin) ("There's a dynamic that exists there where you're going to fulfill your contractual obligations before you fulfill your spot obligations.").

[102] CR/PR at Table IV-2. While reported shipments of subject imports increased from 2012 to 2013, we find that this increase was nominal (*** percent), particularly compared to the *** percent increase in reported subject import shipments from 2011 to 2012. CR/PR at Table IV-7.

[103] CR/PR at Table IV-6. Subject imports as a share of the U.S. market were *** percent in interim 2013 and *** percent in interim 2014.

a share of the market declined from *** percent in 2011 to *** percent in 2012 and then increased to *** percent in 2013.[104]

In view of the foregoing, we find the volume of subject imports to be significant in absolute terms and relative to consumption. However, for the reasons we discuss below, we do not find that the subject imports had significant price effects or a significant impact on the domestic industry.

### B. Price Effects of the Subject Imports

Section 771(7)(C)(ii) of the Tariff Act provides that evaluating the price effects of the subject imports, the Commission shall consider whether

> (I) there has been significant price underselling by the imported merchandise as compared with the price of domestic like products of the United States, and
>
> (II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.[105]

As previously discussed, price is an important factor in purchasing decisions. There is a high degree of substitutability between the domestic like product and the subject imports. Price was the most important factor cited by purchasers in their purchasing decisions, while quality and availability were the next most important factors.[106]

The Commission collected pricing data for seven products, and quarterly price comparisons between subject imports and the domestic like product are possible for five of these products.[107] Subject imports were concentrated in three of the pricing products: Products 4, 5, and 6. Reported pricing data accounted for approximately 60.5 percent of U.S. producers' U.S. commercial shipments and 65.9 percent of U.S. importers' U.S. commercial shipments of imports from China during the POI.[108] Although there are no pricing products that specifically target the automotive aftermarket, the pricing products nevertheless capture

---

[104] CR/PR at Table IV-6. U.S. producers' U.S. shipments as a share of the market were *** percent in interim 2013 and *** percent in interim 2014.

[105] 19 U.S.C. § 1677(7)(C)(ii).

[106] CR at II-19, PR at II-12.

[107] Product 1 was R-134a sold in bulk to distributors; Product 2 was R-134a sold in bulk to retailers; Product 3 was R-134a sold in bulk to end users for foam expansion, foam blowing, and aerosol applications; Product 4 was R-134a sold in 30 pound containers to distributors; Product 5 was R-134a sold in 30 pound containers to retailers; Product 6 was R-134a sold in 12 ounce containers to distributors; and Product 7 was R-134a sold in 12 ounce containers to retailers. Subject imports were not present in Product 3. The domestic like product was not present in Product 2. CR at V-5-6, PR at V-3-4.

[108] CR at V-5-6, PR at V-3-4.

competition between the domestic like product and subject imports, the majority of which is in the automotive aftermarket. Product 3 is the only use-specific product definition, and there were no subject imports of Product 3.

We find that there are mixed instances of underselling and overselling by subject imports. The record shows more instances of overselling than underselling by subject imports on a quarterly basis and more underselling than overselling by subject imports on a volume basis.[109] Subject imports undersold the domestic like product in 31 of 66 quarterly comparisons, at margins ranging from 0.5 percent to 47.5 percent.[110] In the 35 instances in which subject imports oversold the domestic like product, prices for subject imports were between 1.2 percent and 77.2 percent higher than prices for domestically produced R-134a.[111] The quantity of subject imports in instances of underselling, *** pounds, exceeded the quantity of subject imports in instances of overselling, which was *** pounds.[112]

We cannot find any correlation between the observed underselling and shifts in market shares for the subject imports. There were significant quantities of subject imports that undersold the domestic like product during each year of the POI,[113] but the only gains in subject import market share occurred from 2011 to 2012, when subject imports increased their market share from *** percent to *** percent and U.S. producers' U.S. shipments fell from *** percent to *** percent of the U.S. market.[114] As noted above, however, we earlier found that this increase in market share was a function of purchasers' response to the supply shortages that persisted through at least the end of 2011.[115] Thus, the supply situation of the domestic industry, rather than underselling by subject imports, explains the shifts in market share.[116] This, as well as the lack of correlation between underselling and price movements, discussed below, mitigates the significance of the observed underselling.

We acknowledge that the domestic industry's prices declined over the POI. The record shows that prices at the beginning of the POI were at high levels due to the supply squeeze that

---

[109] *See generally*, CR/PR at Tables V-3-9, V-11-12.

[110] CR at V-22, PR at V-6-7.

[111] CR at V-22, PR at V-7.

[112] CR/PR at Table V-12.

[113] CR/PR at Tables V-6.

[114] CR/PR at Table IV-6. From 2012 to 2013, the domestic industry lost market share to the subject imports in the automotive aftermarket but gained it in "other refrigerants," the other market segment with subject import competition in which the domestic industry has greater shipments.

[115] *See* CR/PR at Table IV-6.

[116] Petitioner asserts that AUVs in the automotive aftermarket fell from *** due to the presence of subject imports. Petitioner's Prehearing Brief at 14-15. Petitioner acknowledges that in 2011 prices were higher in the automotive aftermarket than in other markets because of the supply shortage. Petitioner also acknowledges that prices in the automotive aftermarket are more responsive to supply and demand because such sales take place in the spot market, compared to other contract-based markets. Petitioner's Prehearing Brief at 36.

began in 2010.[117]  Prices peaked in 2011.[118]  As the supply situation normalized in 2012, prices declined.[119]  Therefore, the decline in prices during the POI is associated with the cessation of the supply shortage that temporarily inflated prices.  Because the supply shortage was most acute in the automotive aftermarket, prices therein increased the most, and as a consequence, experienced greater declines over the POI as compared to prices of R-134a sold for other purposes.

Indeed, pricing data on the record demonstrate that price declines occurred whether subject imports oversold or undersold the domestic like product and regardless of whether subject imports were present in the market for a particular pricing product.[120]  Prices declined for five of the seven products (Products 1 and 4-7) at approximately the same rate, even in the presence of overselling by subject imports.  Subject import prices for Product 1 oversold the domestic like product in all but two quarterly comparisons,[121] [122] yet prices for the domestic like product peaked in the second quarter of 2011 and continued falling throughout the remainder of the POI.[123]  Products 5, 6, and 7 all had mixed instances of overselling and underselling, yet exhibited price declines over the POI.[124]  Prices for Product 4, which had the most underselling by subject imports, fell at approximately the same rate as prices for Products 1, 5, 6, and 7.[125]

We have also examined whether the subject imports prevented the domestic industry from instituting price increases that otherwise would have occurred.  The domestic industry's ratio of cost of goods sold ("COGS") to net sales increased from 2011 to 2013.[126]  We find, however, that this increase in the COGS to net sales ratio is attributable primarily to changes in net sales value, which decreased from $*** in 2011 to $*** in 2012 and then to $*** in

---

[117] Exhibits to Testimony of Jim Dougan (Oct. 15, 2014) at 1; Respondents' Prehearing Brief at Exhs. 1 (quoting an industry report "Starting mid-2010 and continuing through 2011, HFC-134a has experienced supply shortages and cost increases that seem to escalate month-by-month.") (May 5, 2011) and 2 (quoting letters from ***) (*** .

[118] CR/PR at Figures V-1-7.  *See also* Exhibits to Testimony of Jim Dougan (Oct. 15, 2014) at 1 (showing prices from Q1 2010 to Q2 2014); DuPont Prehearing Brief at 4.

[119] CR/PR at Figures V-1-7.

[120] CR/PR at Figures  V-1-7.

[121] CR/PR at Table V-3.

[122] DuPont provided an exhibit comparing certain repackagers' annual direct import AUVs to sales AUVs of *** to each of these repackagers.  DuPont Posthearing Brief at Exh. 2.  We note that these AUVs are not directly comparable to importers' sales prices, as they do not include any sales markup that would typically be made by an importer selling R-134a in the U.S. market.

[123] CR/PR at Figure V-1.

[124] CR/PR at Figures V-5-7.

[125] Given that the pricing data on the record provides relatively high coverage of both the domestic like product and subject imports, we have relied on such pricing data.  Our usual practice is not to rely heavily on AUV data because changes in AUV data over time can be a result of changes in product mix.

[126] This ratio increased from *** percent in 2011 to *** percent in 2012 and *** percent in 2013.  It was *** percent in interim 2013, and *** percent in interim 2014.  CR/PR at Appendix D.

2013.[127] By contrast, on a unit basis, raw material costs and COGS fluctuated within a fairly narrow range throughout the POI. Raw materials were $*** per short ton in 2011, $*** per short ton in 2012, and $*** per short ton in 2013.[128] Similarly, COGS were $*** per short ton in 2011, $*** per short ton in 2012, and $*** per short ton in 2013.[129] Demand over the POI was flat, and given that the market was emerging from a supply shortage, price increases were not likely. Consequently, we find that the increase in the COGS/net sales ratio is a function of the high price levels that existed at the beginning of the POI due to supply shortages -- and the subsequent alleviation of those shortages -- rather than the presence of subject imports.[130] [131]

[127] CR/PR at Appendix D. Net sales were $*** in interim 2013 and $*** in interim 2014.

[128] CR/PR at Appendix D. Raw material costs were $*** per short ton in interim 2013 and $*** per short ton in interim 2014.

[129] CR/PR at Appendix D. Total COGS was $*** per short ton in interim 2013 and $*** in interim 2014.

[130] With respect to petitioner's argument that whether prices were returning to a "natural equilibrium" is irrelevant to the price effects inquiry, Petitioner's Posthearing Brief at 6, the statute does not refer to "equilibrium" prices and we have not purported to compute such prices. Nonetheless, the statute does direct us to ascertain whether the effect of subject imports is to depress prices to a significant degree. 19 U.S.C. §1677(7)(C)(ii)(II). In light of this provision, our responsibility is to determine whether price declines over the POI are due to subject imports or other causes. Therefore, conditions of competition that may cause price levels to be higher or lower than they otherwise would have been are pertinent to our inquiry. In these investigations, the fact that there was an acknowledged supply shortage early in the POI is a factor that caused prices to be higher than they otherwise would have been. *E.g.*, Respondents' Prehearing Brief at Exh. 2, Letter from *** on April 1, 2011 (advising that "***"). The resumption of normal supply conditions is a factor that would tend independently to reduce prices. We have properly considered these conditions of competition in fulfilling our statutory responsibility to ascertain whether subject imports had significant price depressing effects.

[131] During the hearing, various domestic industry witnesses expressed the view that the subject imports had "spillover" effects that caused prices to decline for domestically produced R-134a sold for uses other than the ones for which there was subject import competition. Tr. at 91 (Rubin, Geosits). While we do not question the testimony that purchasers may have used prices of subject imports in the automotive aftermarket in negotiating prices for the R-134a products that they purchased for other uses, neither DuPont nor petitioner provided specific examples of when domestic producers were forced to reduce prices because of "spillover effects." *See* DuPont Posthearing Hearing Brief, Part II at 24-25; Petitioner's Posthearing Brief at 6-9. The testimony does not outweigh the fact that purchasers had no credible alternative to purchasing R-134a for other non-automotive aftermarket uses from the domestic industry. Consequently, we find that the alleviation of the supply shortage, not "spillover" effects from the subject imports, explains the decline in prices across different uses, including those in which there was limited or no subject import competition.

In light of the foregoing, we find that the subject imports did not have the effect of depressing prices or preventing price increases that would otherwise have occurred to a significant degree.[132] Because we also find that the observed underselling did not lead to significant shifts in market share, we find that the subject imports did not have significant price effects.

### C. Impact of the Subject Imports[133]

Section 771(7)(C)(iii) of the Tariff Act provides that examining the impact of subject imports, the Commission "shall evaluate all relevant economic factors which have a bearing on the state of the industry."[134] These factors include output, sales, inventories, capacity utilization, market share, employment, wages, productivity, profits, cash flow, return on investment, ability to raise capital, research and development, and factors affecting domestic prices. No single factor is dispositive and all relevant factors are considered "within the context of the business cycle and conditions of competition that are distinctive to the affected industry."

In a market where apparent consumption was largely stable from 2011 to 2013, the domestic industry's output, shipments, market share, and employment indicators were also relatively stable, showing only minor fluctuations. By contrast, the domestic industry's operating income steadily declined over the POI, both when subject import volume increased and when subject import volume flattened.

The domestic industry's average capacity showed little change over the POI, while production and capacity utilization both increased from 2011 to 2013.[135] Average capacity was

---

[132] We acknowledge that there were some instances of confirmed lost sales and revenues. CR/PR at Table V-13-14. These, however, do not outweigh the other data in the record which, taken as a whole, show the lack of significant price effects.

[133] The statute instructs the Commission to consider the "magnitude of the dumping margin" in an antidumping proceeding as part of its consideration of the impact of imports. 19 U.S.C. § 1677(7)(C)(iii)(V). In its final determination of sales at less value, Commerce found antidumping duty margins of 280.67 percent for imports of R-134a from China for all exporters. *1,1,1,2 – Tetrafluoroethane from the People's Republic of China*, 79 Fed. Reg. 62597 (final determination of sales at less than fair value) ("Commerce Final AD Determination") (Oct. 20, 2014). In its final countervailing duty investigation, Commerce found countervailable subsidies at the following rates: 1.87 to 22.75 percent for individually investigated parties, and 14.23 percent as the all others rate. *1,1,1,2 – Tetrafluoroethane from the People's Republic of China*, 79 Fed. Reg. 62594 (final affirmative countervailing duty determination) ("Commerce Final CVD Determination") (Oct. 20, 2014).

[134] 19 U.S.C. § 1677(7)(C)(iii); *see also* SAA at 851 and 885 ("In material injury determinations, the Commission considers, in addition to imports, other factors that may be contributing to overall injury. While these factors, in some cases, may account for the injury to the domestic industry, they also may demonstrate that an industry is facing difficulties from a variety of sources and is vulnerable to dumped or subsidized imports.").

[135] CR/PR at Table III-3.

*** short tons in 2011, *** short tons in 2012, and *** short tons in 2013.[136]  Production declined from *** short tons in 2011 to *** short tons in 2012, and then increased to *** short tons in 2013.[137]  Capacity utilization was *** percent in 2011, *** percent in 2012, and *** percent in 2013.[138]  The domestic industry's shipments showed minor fluctuations.  U.S. shipments were *** short tons in 2011, *** short tons in 2012, and *** short tons in 2013.[139]

As previously discussed, the domestic industry lost market share from 2011 to 2012 because of the supply shortage, but regained some of that loss in 2013.  The domestic industry's market share decreased slightly over the entire POI, from *** percent in 2011 to *** percent in 2012, and then increased to *** percent in 2013.[140]  We examined data collected concerning sales for different applications.  These data indicate that as the domestic industry lost market share in sales to the automotive aftermarket from 2011 to 2013, it gained market share in the "other refrigerants" application in which it faced competition from subject imports.[141]

The number of production workers, wages paid, productivity, and hours worked remained relatively stable from 2011 to 2013.  The number of production workers was *** in 2011, *** in 2012, and *** in 2013.[142]  Wages paid increased slightly from $*** in 2011 to $*** in 2012 and 2013.[143]  Productivity stayed at *** short tons per 1,000 hours throughout the POI.[144]  Hours worked were *** in 2011, *** in 2012, and *** in 2013.[145]  Hourly wages increased slightly over the POI, from $*** per hour in 2011 to $*** per hour in 2012, and then to $*** per hour in 2013.[146]

---

[136] CR/PR at Table III-3.  Capacity was *** short tons in both interim 2013 and interim 2014.

[137] CR/PR, Table III-3.  Production was *** short tons in interim 2013 and *** short tons in interim 2014.

[138] CR/PR at Table III-3.  Capacity utilization was *** percent in interim 2013 and *** percent in interim 2014.

[139] U.S. shipments were *** short tons in interim 2013 and *** short tons in interim 2014. CR/PR at Table C-1.  U.S. producers' end of period inventories were *** short tons in 2011, *** short tons in 2012, and *** short tons in 2013.  They were *** short tons in interim 2013 and *** short tons in interim 2014.  CR/PR at Table III-9.  Inventories as a ratio of U.S. production were *** percent in 2011, *** percent in 2012, and *** percent in 2013.  They were *** percent in interim 2013 and *** percent in interim 2014. *Id.*

[140] CR/PR at Table IV-6.  Domestic producers' market share was *** percent in interim 2013 and *** percent in interim 2014.

[141] CR/PR at Tables III-6, IV-7.  *See* n.115.

[142] CR/PR at Table III-11.  There were *** production related workers in interim 2013 and *** in interim 2014.

[143] CR/PR at Table III-11.  Wages paid were $*** in interim 2013 and $*** in interim 2014.

[144] CR/PR at Table III-11.  It remained at *** short tons per hour in interim 2013 and increased marginally in interim 2014.

[145] CR/PR at Table III-11.  Hours worked were *** in interim 2013 and *** in interim 2014.

[146] CR/PR at Table III-11.  Hourly wages were $*** in interim 2013 and $*** in interim 2014.

The domestic industry's net sales quantities showed minor fluctuations during the POI. COGS declined both absolutely and on a per-unit basis.  Sales revenues, which in 2011 reflected the increased prices the domestic industry was able to receive that year because of the supply shortage, declined more rapidly than did COGS.  As a consequence, the domestic industry's operating income declined from $*** in 2011 to $*** in 2012 and $*** in 2013.[147] Consequently, operating income decreased severely, both from 2011 to 2012, when subject import volume and market share increased, and from 2012 to 2013, when subject import volume and market share declined.[148]  The domestic industry's reported capital expenditures

---

[147] CR/PR at Table D-1.  The domestic industry's operating income was $*** in interim 2013, and it posted an operating loss of $*** in interim 2014. *Id.*

Mexichem purchases its primary raw material input from a related supplier located in Mexico.  It contends that the purchase values it reports in its financial records are the ones that should be used in the Commission's financial analysis.  Petitioner's Prehearing Brief at 21-25. Respondents generally disagree.  Respondents' Posthearing Brief at Exh. 1, p. 7.  In cases where inputs are purchased from a related party (domestic or foreign), the Commission has followed the practice of requiring the elimination of related party profit or loss such that only the related supplier's cost is reflected in the financial results reported to the Commission.  Consistent with this approach, Part VI of the Commission Report presented the U.S. industry's financial results with the above-referenced input adjustment.  In order to consider this issue more fully, Appendix D also presented the U.S. industry's financial results without the input adjustment.  We considered both sets of financial results and arrived at the same general conclusion regarding the financial results and condition of the U.S. industry.

Having considered this issue further, in this case and in general, we believe that the financial results information reported in Appendix D (i.e., without the input adjustment for related party profit or loss) is more useful for purposes of our analysis because it more closely reflects the actual cost of goods sold which directly impacted the U.S. producer's decisions related to revenue, *i.e.* pricing.  Based on this conclusion, in future questionnaires the Commission no longer intends, as a standard practice, to require a separate adjustment to eliminate relevant profit or loss on inputs purchased from related parties.  Instead, the Commission will require that relevant costs included in reported financial results be consistent with and based on the accounting books and records of the firm responding to the U.S. producer questionnaire.

While this reflects a change in practice with respect to how financial results are to be reported, the Commission will continue to gather relevant information regarding input purchases from related suppliers for its analysis and will examine anomalous patterns, to the extent present, related to such input purchases.

[148] Additionally, although the volume of subject imports was lower and the domestic industry's market share higher in interim 2014 than in interim 2013, this did not result in improvement in the domestic industry's operating performance.  The domestic industry's operating income as a ratio to net sales was *** percent in interim 2013 and *** in interim 2014.  CR/PR at Table D-1.  Petitioner argues that subject imports increased sharply in the beginning of 2014, resulting in abnormally high inventories, and asserts that importers "would have been desperate to unload those inventories before the end of the auto air conditioning season, and would have offered record low prices."  Petitioner's Prehearing Brief at 20-21.  However, petitioner provides no support for this assertion, and pricing data on the record shows that, with one exception, subject import prices increased during interim 2014.  CR/PR at Tables V-3-9.

and research and development ("R&D") expenses increased from 2011 to 2013.[149] Total capital expenditures were $*** in 2011, $*** in 2012, and $*** in 2013.[150] R&D expenses were $*** in 2011, $*** in 2012, and $*** in 2013.[151]

In light of the general stability of the domestic industry's output, sales quantities, and market share, the domestic industry's severe decline in operating performance from 2011 to 2013 was attributable to the decline in prices that occurred during the POI. As discussed above, these price declines occurred because prices were anomalously high at the beginning of the POI due to the supply shortages of 2010 and 2011 and began to return to their pre-shortage levels as the market stabilized in 2012 and 2013. By contrast, the subject imports did not have significant price depressing effects and did not significantly prevent price increases that otherwise would have occurred. Moreover, there is no correlation between declines in operating performance, which occurred throughout the POI, and changes in subject import volume and market share.[152] In sum, the record does not support a conclusion that the domestic industry's declines in operating performance were caused by the subject imports.

In view of the foregoing, we find that subject imports have not had significant adverse impact on the domestic industry.

**7. No Threat of Material Injury by Reason of Subject Imports**

**A. Legal Standard**

Section 771(7)(F) of the Tariff Act directs the Commission to determine whether the U.S. industry is threatened with material injury by reason of the subject imports by analyzing whether "further dumped or subsidized imports are imminent and whether material injury by reason of imports would occur unless an order is issued or a suspension agreement is accepted."[153] The Commission may not make such a determination "on the basis of mere conjecture or supposition," and considers the threat factors "as a whole" in making its determination whether dumped or subsidized imports are imminent and whether material injury by reason of subject imports would occur unless an order is issued.[154] In making our determination, we consider all statutory threat factors that are relevant to these investigations.[155]

---

[149] CR/PR at Table VI-4.

[150] CR/PR at Table VI-4. Capital expenditures were $*** in interim 2013 and $*** million in interim 2014.

[151] CR/PR at Table VI-4. R&D expenses were $*** in interim 2013 and $*** in interim 2014.

[152] Petitioner's counsel appears to concede that subject imports were not injurious in 2011. *See* Tr. at 208 (Schagrin) ("And at the time they entered the market, they were not injurious and that's why no petitions were filed in 2010 or 2011.").

[153] 19 U.S.C. § 1677(7)(F)(ii).

[154] 19 U.S.C. § 1677(7)(F)(ii).

[155] These factors are as follows:

(Continued...)

**B. Analysis**

**1. Likely Volume**

As discussed above, we have found the volume of subject imports to be significant during the POI. In particular, we found that subject import volume increased due to supply shortages that occurred in 2010 and 2011, and which forced purchasers for the automotive replacement aftermarket to turn to imported R-134a from China. After the supply shortage was resolved, subject import volume ceased to increase. Consequently, there is no evidence in the record that the U.S. market conditions that led to subject import volume increases from 2011 to 2012 will exist in the imminent future.

The record shows that capacity in China increased throughout the POI, yet subject import volume did not increase accordingly; instead it began to decrease midway through the POI. Reported capacity in China increased from *** short tons in 2011 to *** short tons in

---

(…Continued)

(I) if a countervailable subsidy is involved, such information as may be presented to it by the administering authority as to the nature of the subsidy (particularly as to whether the countervailable subsidy is a subsidy described in Article 3 or 6.1 of the Subsidies Agreement) and whether imports of the subject merchandise are likely to increase,

(II) any existing unused production capacity or imminent, substantial increase in production capacity in the exporting country indicating the likelihood of substantially increased imports of the subject merchandise into the United States, taking into account the availability of other export markets to absorb any additional exports,

(III) a significant rate of increase of the volume or market penetration of imports of the subject merchandise indicating the likelihood of substantially increased imports,

(IV) whether imports of the subject merchandise are entering at prices that are likely to have a significant depressing or suppressing effect on domestic prices and are likely to increase demand for further imports,

(V) inventories of the subject merchandise,

(VI) the potential for product-shifting if production facilities in the foreign country, which can be used to produce the subject merchandise, are currently being used to produce other products,

…

(VIII) the actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the domestic like product, and

(IX) any other demonstrable adverse trends that indicate the probability that there is likely to be material injury by reason of imports (or sale for importation) of the subject merchandise (whether or not it is actually being imported at the time).

19 U.S.C. § 1677(7)(F)(i). To organize our analysis, we discuss the applicable statutory threat factors using the same volume/price/impact framework that applies to our material injury analysis. Statutory threat factors (I), (II), (III), (V), and (VI) are discussed in the analysis of likely subject import volume. Statutory threat factor (IV) is discussed in the analysis of likely subject import price effects. Statutory factors (VIII) and (IX) are discussed in the analysis of likely impact. Statutory factor (VII) concerning agricultural products is inapplicable to this investigation.

2012 and *** short tons in 2013.[156]   It is projected to increase further to *** short tons in 2014, and then remain stable through 2015.  Capacity utilization in China decreased between 2012 and 2013, from *** percent to *** percent, and is projected to decrease further to *** percent in 2014 and then increase to *** percent in 2015.[157]   However, in light of both the lack of correlation between capacity growth in China and increases in subject imports during the POI and the existence of other markets to absorb such capacity, as discussed below, we do not find that any existing unused capacity or the projected increases in capacity indicate that there is a likelihood of substantially increased imports of subject merchandise into the United States.[158]

The majority of R-134a produced in China was shipped either to China or to export markets other than the United States during the POI and we expect that this will likely continue to be the case in the imminent future.  Home market shipments as a share of total Chinese shipments increased over the POI from *** percent in 2011 to *** percent in 2012 and *** percent in 2013.[159]   The record shows that home market shipments are projected to continue increasing to *** percent in 2014 and *** percent in 2015 and the home market is projected eventually to become the largest market for Chinese R-134a, exceeding exports to markets other than the United States.[160]   Exports to markets other than the United States were also substantial during the POI; these accounted for *** percent of total shipments in 2011 and *** percent in 2012 and 2013.[161] [162]   By contrast, export shipments to the United States as a share

---

[156] CR/PR at Table VII-2.  Capacity in China was *** short tons in interim 2013 and *** short tons in interim 2014.

[157] CR/PR at Table VII-2.  Capacity utilization was *** percent in interim 2013 and *** percent in interim 2014.

[158] We have also examined the potential for product shifting.  *** of the five responding Chinese producers of R-134a indicated that they had the ability to shift production between R-134a and other products using the same equipment and/or labor.  They indicated that market demand is the primary deciding factor in shifting production.  CR at VII-8, PR at VII-5-6 .  Nevertheless, given that the industry in China already possesses excess capacity, we do not believe that significant product shifting is likely as a practical matter.

[159] CR/PR at Table VII-2.  Home market shipments as a share of total shipments were *** percent in interim 2013 and *** percent in interim 2014.

[160] CR/PR at Table VII-2.

[161] CR/PR at Table VII-2.  Antidumping duties on R-134a from China have been in effect in India since 2011.  CR at VII-11, PR at VII-7.  Nevertheless, export shipments of subject merchandise to markets other than the United States increased in absolute terms in 2012 and 2013, and such shipments remained a relatively constant share of total shipments.  CR/PR at Table VII-2.

[162] CR at I-30, PR at I-20.  The EU has issued a directive banning "air conditioning systems and refrigerants designed to use HFCs with a GWP higher than 150, which includes R-134a."  However, "the directive under the current deadline remains in question," CR at I-32, PR at I-21 , and hearing testimony by Mr. Rubin indicated that a phase-down of R-134a in the EU is not imminent, Tr. at 98(Rubin): "even in Europe which has a cap and phase-down reg, there is a long period with which 134a will continue to be used in the European marketplace.  So it's not going to happen next year.  The reg comes in next year, but it will actually be a transition over a couple of decades."

of all shipments decreased over the POI, from *** percent in 2011 to *** percent in 2012 and *** percent in 2013.[163]

End of period inventories of subject merchandise in China increased slightly over the POI, but showed little change as a ratio to production.  They were *** short tons in 2011, *** short tons in 2012, and *** short tons in 2013.[164]  As a ratio to production, end of period inventories were *** percent in 2011, *** percent in 2012, and *** percent in 2013.[165]  U.S. inventories of subject merchandise did increase from *** short tons in 2011 to *** short tons in 2012 and *** short tons in 2013.[166]  The available data indicate that any inventory buildup did not persist after the end of 2013.[167]

For the foregoing reasons, we conclude that while Chinese production may increase in the imminent future, any such increase is not likely to be directed to the U.S. market.[168]  Subject imports did not significantly increase their presence in the U.S. market once the

---

[163] CR/PR at Table VII-2.  Shipments to the United States as a share of total shipments were *** percent in interim 2013 and *** percent in interim 2014.  Shipments by volume to the United States increased slightly over the POI, but were lower at the end of the POI than at the beginning.  *Id.*

[164] CR/PR at Table VII-2.  End of period inventories were *** short tons in interim 2013 and *** short tons in interim 2014.

[165] CR/PR at Table VII-2.

[166] CR/PR at Table VII-3.

[167] CR/PR at Table VII-3  .  U.S. inventories of subject merchandise were *** short tons in June 2014, below both the *** short tons of inventories in June 2013 and the end of year inventory levels in 2012 and 2013.

[168] We also examined the nature of the subsidy programs Commerce found to be countervailable.  Commerce found the following 16 subsidy programs to be countervailable:
   1) Provision of Acidspar for Less Than Adequate Renumeration
   2) "Two Free/Three Half" Program for Foreign Invested Enterprises
   3) Preferential Loans for HFC Replacements for CFC Refrigerants
   4) Preferential Loans for State-Owned Enterprises
   5) Flurospar Mining Rights for LTAR
   6) Electricity for LTAR
   7) VAT and Tariff Exemptions on Imported Equipment for Favored Industries
   8) Income Tax Credits on Purchases of Domestically Produced Equipment by Domestically Owned Companies
   9) VAT and Tariff Rebates on Domestically Produced Equipment for Encouraged Projects
   10) Export Seller's Credits from Export-Import Bank of China
   11) Enterprise Income Tax Reduction for High and New Technology Enterprises
   12) Export Performance Grant
   13) Technological Development and Reconstruction Grant
   14) Fluorinated Electronic Chemical Industry Technology Grant
   15) Grant to Promote Transformation and Upgrading
   16) Grant for Relocation for Urban Renewal in Quzhou City.
   CR at I-6-7, PR at I-4-5 ; Commerce Final CVD Determination, 79 Fed. Reg. at 62594.

domestic supply shortage was resolved and we consequently find that there is not a likelihood of substantially increased subject imports in the imminent future.

**2. Likely Price Effects**

In our discussion above, we found mixed instances of overselling and underselling by the subject imports. We also found that notwithstanding the instances of underselling by subject imports during the POI, the subject imports did not cause significant price effects. Any increases in subject import market share were due to the domestic supply shortage rather than the pricing of the subject imports. Because we do not believe that subject import volume in the imminent future is likely to change appreciably from the levels observed in 2012 and 2013, we believe that the absence of significant price effects that characterized the POI will likely persist in the imminent future. We consequently find that imports of the subject merchandise are unlikely to enter the U.S. market at prices that are likely to have a significant depressing or suppressing effect on domestic prices and that are likely to stimulate demand for further imports.

**3. Likely Impact**

As we discussed above, during the POI the only indicator of domestic industry performance to show a substantial decline was its operating income, which was not caused by subject imports, but rather, by a decline in prices that occurred as the U.S. market began to stabilize after experiencing supply shortages in 2010 and 2011. As stated above, we do not anticipate in the imminent future any significant change in subject import volumes from those that occurred during the latter portion of the POI or significant price effects. Consequently, the subject imports are unlikely to have significant impact on the domestic industry. The record does not provide evidence of any demonstrable adverse trends that indicate the probability that there is likely to be material injury by reason of subject imports. We further find that subject imports have had no significant actual or potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the domestic like product.[169]

In view of the foregoing, we conclude that an industry in the United States is not threatened with material injury by reason of subject imports.

---

[169] The record indicates that the domestic industry's current research and development efforts are not being devoted to developing advanced or improved versions of the domestic like product, R-134a. Instead, domestic producers are focusing their R&D efforts on developing the next generation of refrigerants – in other words, new products that are intended to replace R-134a. CR at VI-21 n. 37-38, PR at VI-6-7 nn. 37-38.

**8.     Conclusion**

For the reasons stated above, we determine that an industry in the United States is not materially injured or threatened with material injury by reason of subject imports of R-134a from China that are sold in the United States at less than fair value.

**CERTIFICATE OF SERVICE**

I, Karl S. von Schriltz, hereby certify under penalty of perjury that on this 19th day of November 2015, I am electronically filing the attached **APPENDIX TO DEFENDANT INTERNATIONAL TRADE COMMISSION'S OPPOSITION TO PLAINTIFFS' MOTIONS FOR JUDGMENT ON THE AGENCY RECORD**. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Karl S. von Schriltz
Karl S. von Schriltz
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3096
Facsimile: (202) 205-3111
karl.vonschriltz @usitc.gov